PAUL J. SULLA #5398
P. O. Box 425
Laupahoehoe, HI  96764
(808) 962-0025

Attorney for Defendant
Stephen B. Wilson

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 07 2006

at ___4___ o'clock and __17 min__ __P__ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| | CR. NO. CR05-00342 HG |
| VS. | INDICTMENT |
| STEPHEN B. WILSON, | [26 U.S.C. ' 7201] |
| Defendant. | |

### DEFENDANT, STEPHEN B. WILSON'S, MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISCLOSE ILLEGAL ELECTRONIC, POSTAL, AND INFORMANT SURVEILLANCE; AND MOTION TO SUPPRESS

TO THE HONORABLE UNITED STATES JUDGE OF SAID COURT:

COMES NOW, Defendant, Stephen B. Wilson, by and through his attorney of record, Paul J. Sulla, and files this his Memorandum of Law in Support of his Motion to Disclose Illegal Electronic, Postal, and Informant Surveillance; and Motion to Suppress; and, as legal precedent and authority in support of said Motions, would respectfully show unto the Court the following:

### STATEMENT OF FACTS

I.

Defendant, Stephen B. Wilson, is charged in the Indictment

1

with various tax charges. Defendant is unaware at what precise point the criminal investigation of his alleged "activities" began.

Defendant seeks to suppress the use of any evidence gathered by the prosecution through illegal or unauthorized postal, electronic, or informant surveillance.

## LEGAL ARGUMENT AND AUTHORITY

II.

1. **DEFENDANT, STEPHEN B. WILSON. HAS RAISED AN INFERENCE OF ILLEGAL ELECTRONIC, POSTAL AND INFORMANT SURVEILLANCE, THROUGH HIS AFFIDAVIT; AND IT IS INCUMBENT UPON THE GOVERNMENT AT THIS STAGE, EITHER TO ADMIT OR DENY THE ALLEGED ILLEGAL ELECTRONIC, POSTAL, AND INFORMANT SURVEILLANCE, IN ORDER TO PREVENT PRESENTATION OF "TAINTED" EVIDENCE AND/OR TESTIMONY TO THE JURY.**

The government claims it has knowledge that the Defendant underreported his gross income for the years at issue. The source of the government's knowledge is open to conjecture and skepticism. Defendant believes that the government gained at least some knowledge of Wilson's finances and other information as the result of illegal electronic, postal, or informant surveillance.

Although it is anticipated that the government will attempt to attack Defendant's standing to force disclosure, his ability to do so, under the standing case law in this Circuit, is well

2

established.

The government clearly has the burden of persuasion on all issues relating to illegal surveillance. See <u>Nordone v. United States</u>, 308 U.S. 338 (1939) and <u>Alderman v. United States</u>, 394 U.S. 165 (1969). Furthermore, the government must meet this burden based on a preponderance of the evidence. See <u>United States v. Seiffert</u>, 357 F.Supp. 801 (S.D. Texas, 1973) and <u>United States v. Husk</u>, 482 F.2d 38 (C.A. 2, 1973). The effect of the <u>Alderman</u> decision modified <u>Nordone</u> with respect to the victim's burden of going forward with evidence obtained. It eliminated the initial burden on the Defendant of showing the occurrence of the surveillance and required the government to disclose it without any preliminary proof. The Court, in that case, accomplished this result with the government's approval. Subsequently, the government's disclosure obligation was codified with the enactment of 18 U.S.C. Section 3504.

It must be conceded that if a witness is subpoenaed, as the result of an illegally overheard conversation, he or she has the right to urge that the subpoena be quashed. See <u>Gelbard v. United States</u>, 408 U.S. 41 (1941); <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385 (1920); and <u>Bacon v. United States</u>, 446 F.2d 667 (C.A. 9, 1971). <u>And, motions to suppress the fruits of illegal electronic surveillance are provided for</u>

3

in 18 U.S.C. Section 2518 (10)(a). Furthermore, a motion may be brought by even a non-party to a criminal proceeding. See United States v. Litty, 354 F.Supp. 217 (D.D.C.).

In the instant case, Wilson may make a Motion to Suppress on the basis of illegal electronic, informant, and/or postal surveillance, and could do so even if he was the third party because the utilization of such practices on the part of the government "substantially effects the rights of third parties". See Flask, supra. See also Austin v. United States, 297 F.2d 356 (4th Cir. 1961); Perlman v. United States, 247 U.S. 7; Schwimmer v. United States, 232 F.2d 855 (8th Cir. 1956); and Duffy v. United States, 473 F.2d 840 (8th Cir. 1973).

Evidence derived from illegally overheard conversations should be suppressed.

Clear authority from the United States Supreme Court man dates disclosure, under oath, by the United States Attorney, either admitting or denying the existence of illegal surveillance. Alderman, supra. This Court should enter an order directing the United States Attorney to make such disclosure and, upon a finding of illegality any evidence or leads should be suppressed.

Illegal use of postal mail cover by the government is also grounds for suppression.

4

The utilization of "postal mail cover" to develop evidence for any crime <u>other</u> than a felony is inherently illegal. Section 213.3 - Definitions of the Administrative Support Manual of the United States Postal Service includes the following:

".31 Mail Cover. - The process by which a record is made of any data appearing on the outside cover of any class of mail matter, including checking the contents of any second, third, or fourth-class mail matter is now sanctioned by law, in order to obtain information in the interest of (a) protecting the national security, (b) locating a fugitive, or (c) <u>obtaining evidence of commission or attempted commission of a crime.</u>

   .33 - Crime. -- <u>For the purposes of these regulations, any commission of an act or the attempted commission of an act that is punishable by law by imprisonment for a term exceeding one year</u>".

The only regulations allowing disclosure of postal information to law enforcement authorities, without a warrant, are those pertaining to "postal mail cover". The regulations provide, in Section 213.4 - "Authorizations" that the Chief Postal Inspector or his designee are the only administrative officials who have the power to order "mail covers" when "...written request is received from any law enforcement agency wherein the requesting authority stipulates and specifies the reasonable grounds that exist which demonstrate the mail cover is necessary to: (1) protect the national security, (2) locate a fugitive, or (3) <u>obtain information</u>

5

<u>regarding the commission or the attempted commission of a crime.</u>".
See Section .412 under 213.4 of the Administrative Support Manual of the United States Postal Service.

Absolutely no showing has been made by the government, the Internal Revenue Service, the Department of Treasury, the Office of the U. S. Attorney, the Department of Justice, or any other agency that proper regulatory procedures and administrative steps were followed in obtaining the use of the "mail cover," or "informant surveillance," or the interception of private conversations. The government should be required to come forward, under oath, and prove its compliance with, or violation of, these regulations.

Additionally, under the Internal Rules and Regulations governing criminal investigations conducted by Special Agents of the Internal Revenue Service the use of informants for consensual eavesdropping is not sanctioned unless directly approved by the Justice Department. Defendant has alleged that he has been the victim of "informant eavesdropping" by the government and this eavesdropping nay have aided the government, subsequent to the return of the Indictment, in preparing to frustrate the presentation of the defense at the trial on the merits of this case.

"Monitoring of telephone and in-person conversations with the consent of one party, requires the advance authorization of the Attorney General or any designated Assistant Attorney General. Request for such authority may be signed by the Director, Internal Division or, in his/her absence, the Acting Director. This

6

authority can not be redelegated. These same officials may authorize temporary emergency monitoring when exigent circumstances preclude requesting authorization from the Attorney General in advance." See United States v. Caceres, 545 F.2d 1183 (C.A. 9, 1976) Citing Internal Revenue Manual, Section 652.22(1). There has been no showing that the undercover agents obtained proper authorization to utilize "eavesdropping" in their investigation of Defendant. Failure to do so is a violation of the Internal Revenue's own Internal Rules and Regulations. The government should be required to come forward and either admit or deny, under oath, such violation and upon a finding of such violation, by this Court, the evidence, and all leads therefrom, developed or obtained as a result of such illegal activity should be suppressed.

An agency does not have to promulgate rules and regulations, but if it does so, the law is imminently clear that such rules and regulations must be scrupulously obeyed and applied equally to all within their reach. This principle has been upheld by numerous Courts of Appeals and at least two District Courts in the Southern District of Texas. In United States v. Toussaint, 456 F.Supp. 1069 (S.D. Texas, 1978) the District Court had this to say about the violations by Internal Revenue Agents of their own procedure: "What is the consequence of I.R.S.'s intentional violations of the rules promulgated in its Audit Techniques Handbook? An agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its

7

actions can not stand and the Courts will strike it down.". See Toussaint at Page 1074. In promulgating the Audit Technique Manual the Internal Revenue Service has made a virtual contract with the public that the procedures outlined therein will be adhered to and followed. The Supreme Court of the United States has consistently forced federal agencies to adhere to and follow their own rules, regulations and procedures under the Accardi Doctrine. United States v. Nixon, 90 S.Ct. 3090 (1974) and related appeals such as Mayor and City Council of Baltimore v. Matthews, 562 F.2d 914 (C.A. 4, 1977); Electronic Components Corp. of N.C. v. NLRB 546 F.2d 1088 (C.A. 4, 1976) and United States v. Heffner, 420 F.2d 809 (C.A. 4, 1969).

In Heffner the Court of Appeals for the Fourth Circuit observed that "instructions issued to IRS Special Agents go beyond most legal requirements to assure that persons are advised of their constitutional rights." The Court of Appeals rejected as unpersuasive the government argument that, since the regulations went further than required by the Constitution, the Defendant had no standing to complain of IRS violation. The Court, in suppressing the evidence, observed:

> "Thus, voluntarily the IRS took it upon itself to give taxpayers, before interrogation, notice that they were suspected of criminal tax fraud and went further than the obligation to give the full Miranda warnings before seeking incriminating statements. An agency of the government must scrupulously

8

observe rules, regulations, or procedures which it has established. When it fails to do so, its actions can not stand and the Courts will strike it down."

This doctrine was announced in United States Ex Rel Accardi v. Shaughnessy 74 S.Ct. 499". The Court of Appeals also observed in analyzing cases and citations pertaining to the Supreme Court doctrine that "the failure of the Board and Department of Justice to follow their own established procedures was held a violation of due process in Accardi." The Court of Appeals also succinctly rejected the government's contention concerning its regulations with the following observation, "It is of no significance that the procedures or instructions which the IRS has established are more generous than the Constitution requires." In Service v Dulles, 77 S.Ct. 1152, the Supreme Court vitiated the discharge of a foreign service officer because of the State Department's failure to follow its own procedures. The Court concluded that it made no difference whether the State Department had a statutory or constitutional obligation to establish the procedure in question:

"While it is of course true that the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, having done so, he could not, so long as the Regulations remained unchanged, proceed without regard to them."

9

It was further held in Heffner, "Nor does it matter that the IRS instructions to Special Agents were not promulgated in something formally labeled a regulation or adopted with strict regard to the Administrative Procedure Act; the Accardi Doctrine has a broader sweep." Under this rationale mere administrative policy stands on the same footing as formally promulgated regulation.

In a similar vein, the United States Court of Appeals for the First Circuit affirmed the District Court which "relied on the general principle that due process requires government agencies to follow their specified procedures and on the Fourth Circuit opinion in United States v. Heffner, 410 F.2d 809..." in suppressing evidence acquired in violation of IRS regulation or procedures. See United States v. Leahy, 434 F.2d 7 (C.A. 1, 1970).

Leahy and Heffner were specifically followed in United States v. Broad, 324 F.Supp. 800 (S.D. Texas, 1971) by the Honorable J. V. Singleton of the Southern District of Texas. As stated in Brod, "...an agency's failure to conform to its own standards denies due process to one who is thereby deprived of substantial rights."

After Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261 (1921) fraud, trickery, and deceit by federal agents has resulted in suppression of the evidence obtained. Under Gouled consent obtained by fraud or trickery is no consent at all and any seizure resulting from such actions is "unreasonable" under the Fourth Amendment. Gouled at P. 263. United States v. Broad, 324 F.Supp.

800 (S.D. Tex. 1971) and <u>United States v. Toussaint</u>, 456 F.Supp. 1069 (S.D. Tex. 1978) at PP. 1073-1075. Any fraud, trickery, or deceit practiced by IRS agents which results in "consent" obtained by deception is an unreasonable search and seizure and violates the Fourth Amendment in this Circuit. <u>United States v. Tweel</u>, 550 F.2d 297 (5th Cir. 1977) at 299-300. The Fifth Circuit has held --

"It is elementary that evidence obtained through 'fraud, trickery, and deceit' of revenue agents is not admissible in criminal tax prosecutions."

<u>U.S. v. Powell</u>, 835 F.2d 1095 (5th Cir. 1988) at P. 1098. <u>Powell</u> continued a long line of cases which began prior to <u>Tweel</u> and continued through <u>United States v. Prudden</u>, 424 F.2d 1021 (5th Cir. and <u>United States v. Caldwell</u>, 820 F.2d 1395 (5th Cir. 1987).

After consideration of the exhaustive authorities analyzed above, it becomes abundantly clear that the Internal Revenue Manual governing the conduct of Special Agents and the Administrative Support Manual of the United States Postal Service, as well as the Justice Department's own internal guidelines, are binding on the government in this prosecution. Any evidence which was obtained in violation of the procedures set out by these various rules and regulations is "tainted". All of the evidence garnered by any fraud, trickery, or deceit, should be suppressed. It follows that this Honorable Court should suppress all evidence obtained

11

directly, or indirectly, by the government through utilization of illegal, electronic, postal, or informant surveillance as a "product" of unreasonable search and seizure in violation of the Fourth Amendment.

## CONCLUSION

For all of the above reasons, the government should be ordered to disclose, under oath, all surveillance, of any type, which may have been conducted in violation of the various regulations of its agencies or Justice Department. All evidence, and leads therefrom, gathered or developed through unauthorized illegal surveillance, should be suppressed.

Respectfully submitted,

_____
PAUL J. SULLA #5398
P. O. Box 425
Laupahoehoe, HI 96764
(808) 962-0025

Attorney for Defendant
Stephen B. Wilson

## CERTIFICATE OF SERVICE

I, Paul J. Sulla, certify that a true and correct copy of the foregoing was sent to _____ by United States postage prepaid on this the ___ day of June, 2006.

_____
Paul J. Sulla

WILSONSUR.MOL/TK384