EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Les.Osborne@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00342 HG |
| | ) | |
| Plaintiff, | ) | UNITED STATES' TRIAL |
| | ) | MEMORANDUM; TABLE OF CONTENTS; |
| vs. | ) | TABLE OF AUTHORITIES; |
| | ) | CERTIFICATE OF SERVICE |
| STEPHEN B. WILSON, | ) | |
| | ) | |
| Defendant. | ) | Trial:  July 18, 2006 |
| | ) | Chief Judge Helen Gillmor |

UNITED STATES' TRIAL MEMORANDUM

TABLE OF CONTENTS

TABLE OF AUTHORITIES

CERTIFICATE OF SERVICE

TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii-vi

I.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . 1

II.    PERTINENT LAW  . . . . . . . . . . . . . . . . . . . . 5

       A.   Elements of 26 U.S.C. § 7206(1)  . . . . . . . . . 5

       B.   Willfulness . . . . . . . . . . . . . . . . . . . 5

       C.   Materiality . . . . . . . . . . . . . . . . . . . 7

III.   METHOD OF PROOF  . . . . . . . . . . . . . . . . . . . 7

       A.   Bank Deposits Method  . . . . . . . . . . . . . . 7

IV.    EVIDENTIARY ISSUES . . . . . . . . . . . . . . . . . . 8

       A.   Business Records  . . . . . . . . . . . . . . . . 8

       B.   Summary Witness and Summary Charts  . . . . . . . 9

       C.   Expert Testimony  . . . . . . . . . . . . . . . . 11

       D.   Certified Records . . . . . . . . . . . . . . . . 11

       E.   Charts  . . . . . . . . . . . . . . . . . . . . . 11

V.     POTENTIAL DEFENSES . . . . . . . . . . . . . . . . . . 13

       A.   The Trust Defense . . . . . . . . . . . . . . . . 13

       B.   Frivolous and Impermissible Defenses  . . . . . . 16

            1.   Constitutionality of Criminal Tax Statutes . . 16

            2.   Jury Nullification . . . . . . . . . . . . . 17

            3.   Reasonable Reliance on Expert Advice  . . . . 17

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

CASES                                                          PAGE(S)

Able Company v. Comm.,
     T.C. Memo. 1990-500,
     60 TCM 813, 823  . . . . . . . . . . . . . . . . . . . . .  15

Black v. United States,
     309 F.2d 331 (8th Cir. 1962) . . . . . . . . . . . . . . . 6

Cheek v. United States,
     498 U.S. 192 (1991)  . . . . . . . . . . . . . . . . . 6, 16

Foster v. United States,
     308 F.2d 751 (8th Cir. 1962) . . . . . . . . . . . . . . 12

Furman v. Comm.,
     45 T.C. 360 (1966),
     aff'd, 381 F.2d 22 (5th Cir. 1967) . . . . . . . . . . . 13

Gregory v. Helvering,
     293 U.S. 465 (1935)  . . . . . . . . . . . . . . . . . . 14

Helvering v. Clifford,
     309 U.W. 331 (1940) . . . . . . . . . . . . . . . . . . 14

La Porta v. United States,
     300 F.2d 878 (9th Cir. 1962) . . . . . . . . . . . . . . . 8

Lazarus v. Comm.,
     58 T.C. 854,
     aff'd, 513 F.2d 824 (9th Cir. 1975)  . . . . . . . . . . 14

Markosian v. Comm.,
     73 T.C. 1235 (1980)  . . . . . . . . . . . . . . . . . . 13

United States v. Bassey,
     613 F.2d 198 (9th Cir. 1979),
     cert. denied, 446 U.S. 919 (1980)  . . . . . . . . . . . . 8

United States v. Bressler,
     773 F.2d 287 (7th Cir. 1985) . . . . . . . . . . . . . . . 6

United States v. Cheek,
     3 F.3d 1057 (7th Cir.),
     cert. denied, 510 U.S. 1112 (1993) . . . . . . . . . . . 17

United States v. Churchill,
     483 F.2d 268 (1st Cir. 1973) . . . . . . . . . . . . . . 12

TABLE OF AUTHORITIES

(continued)

CASES                                                                    PAGE(S)

United States v. Civella,
    666 F.2d 1122 (8th Cir. 1981)  . . . . . . . . . . . . . .  17

United States v. Conforte,
    642 F.2d 869 (9th Cir.),
    cert. denied, 449 U.S. 1012 (1980) . . . . . . . . . . . . . 6

United States v. De Peri,
    778 F.2d 963 (3rd Cir. 1985) . . . . . . . . . . . . . . .  12

United States v. DeVincent,
    632 F.2d 147 (1st Cir. 1980),
    cert. denied, 449 U.S. 986 (1980)  . . . . . . . . . . .  12

United States v. Dinitz,
    424 U.S. 600 (1976)  . . . . . . . . . . . . . . . . . .  12

United States v. Gaudin,
    515 U.S. 506 (1995)  . . . . . . . . . . . . . . . . . . . 7

United States v. Hairston,
    819 F.2d 971 (10th Cir. 1987)  . . . . . . . . . . . . .  19

United States v. Harenberg,
    732 F.2d 1507 (10th Cir. 1984) . . . . . . . . . . . . .  10

United States v. Harris,
    726 F.2d 558 (9th Cir. 1984) . . . . . . . . . . . . . . . 6

United States v. Harris,
    942 F.2d 1125 (7th Cir. 1991)  . . . . . . . . . . . . .  19

United States v. Hawley,
    592 F.Supp. 1186 (D.S.D. 1984),
    aff'd, 768 F.2d 249 (8th Cir. 1985)  . . . . . . . . . .  19

United States v. Jennings,
    724 F.2d 436 (5th Cir. 1984),
    cert. denied, 467 U.S. 1227 (1984) . . . . . . . . . 12, 13

United States v. Johnson,
    594 F.2d 1253 (9th Cir. 1979)  . . . . . . . . . . . . .  11

TABLE OF AUTHORITIES

(continued)

CASES                                                           PAGE(S)

United States v. Latham,
    754 F.2d 747 (7th Cir. 1985) . . . . . . . . . . . . . . . 6

United States v. Lemire,
    720 F.2d 1327 (D.C. Cir. 1983),
    cert. denied, 467 U.S. 1226 (1984) . . . . . . . . . . . 13

United States v. Mann,
    884 F.2d 532 (10th Cir. 1989) . . . . . . . . . . . . . 18

United States v. Marabelles,
    724 F.2d 1374 (9th Cir. 1984) . . . . . . . . . . . . . . 6

United States v. Marchini,
    797 F.2d 759 (9th Cir. 1986),
    cert. denied, 479 U.S. 1085 (1987) . . . . . . . . . 10, 11

United States v. Masat,
    948 F.2d 923 (5th Cir. 1991),
    cert. denied, 508 U.S. 950 (1993) . . . . . . . . . . . 18

United States v. McLeod,
    436 F.2d 947 (8th Cir. 1971) . . . . . . . . . . . . . . 7

United States v. Meyers,
    847 F.2d 1408 (9th Cir. 1988) . . . . . . . . . . . . . 11

United States v. Ostendorff,
    371 F.2d 729 (4th Cir. 1967) . . . . . . . . . . . . . . 6

United States v. Payne,
    978 F.2d 1177 (10th Cir. 1992) . . . . . . . . . . . . . 19

United States v. Pomponio,
    429 U.S. 10 (1976) . . . . . . . . . . . . . . . . . . 5, 6

United States v. Poschwatta,
    829 F.2d 1477 (9th Cir. 1987) . . . . . . . . . . . . . 11

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1991) . . . . . . . . . . 5, 16, 17

iv

TABLE OF AUTHORITIES

(continued)

CASES                                                    PAGE(S)

United States v. Rubino,
    431 F.2d 284 (6th Cir. 1970),
    cert. denied, 401 U.S. 910 (1971)  . . . . . . . . . .  12

United States v. Scales,
    594 F.2d 558 (6th Cir. 1979),
    cert. denied, 441 U.S. 946 (1979)  . . . . . . . . 12, 13

United States v. Schafer,
    580 F.2d 774 (5th Cir.),
    cert. denied, 439 U.S. 970 (1978)  . . . . . . . . . .  10

United States v. Schmidt,
    935 F.2d 1440 (4th Cir. 1991)  . . . . . . . . . . . .  18

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984)  . . . . . . . . . . . 9, 11

United States v. Stephens,
    779 F.2d 232 (5th Cir. 1985)   . . . . . . . . . . . .  12

United States v. Trujillo,
    714 F.2d 102 (11th Cir. 1983)  . . . . . . . . . . . .  17

United States v. Tucker,
    133 F.3d 1208 (9th Cir. 1998)  . . . . . . . . . . . . . 6

United States v. West,
    58 F.3d 133 (5th Cir. 1995)  . . . . . . . . . . . . .  11

United States v. Willie,
    941 F.2d 1384 (10th Cir. 1991),
    cert. denied, 502 U.S. 1106 (1992) . . . . . . . . . .  18

United States v. Zielie,
    734 F.2d 1447 (11th Cir. 1984),
    cert. denied, Gustafson v. United States,
    469 U.S. 1189 (1985)   . . . . . . . . . . . . . . . .  12

Zmuda v. Comm.,
    79 T.C. 714 (1982),
    aff'd, 731 F.2d 1417 (9th Cir. 1984) . . . . . . . . 14, 15

TABLE OF AUTHORITIES

(continued)

RULES AND STATUTES                                        PAGE(S)

26 U.S.C. § 7206(1) . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Evidence 803(b((6) . . . . . . . . . . . 8

Federal Rules of Evidence 803(8)  . . . . . . . . . . . . 11

Federal Rules of Evidence 902(4)  . . . . . . . . . . . . 11

Federal Rules of Evidence 1003  . . . . . . . . . . . . . 9

Federal Rules of Evidence 1005  . . . . . . . . . . . . . 11

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

LESLIE E. OSBORNE, JR. #3740
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: Les.Osborne@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00342 HG |
| | ) | |
| Plaintiff, | ) | UNITED STATES' TRIAL |
| | ) | MEMORANDUM |
| vs. | ) | |
| | ) | |
| STEPHEN B. WILSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

UNITED STATES' TRIAL MEMORANDUM

The United States of America hereby respectfully
submits this memorandum of issues and law to aid this Honorable
Court in the trial of this matter.

I.   FACTUAL BACKGROUND

Stephen Burgos Wilson, a doctor, operated his
gynecology practice on Oahu beginning in the 1980s.  Wilson filed
timely individual income tax returns for the tax years 1998 and
1999 but substantially under-reported his income by failing to

report thousands of dollars from his practice.  To conceal the unreported income, Wilson directed money through several nominee entities to a bank in Hong Kong.  From the foreign bank, he wired the money back to an account in Hawaii opened under the alias of Etienne Bourges (a French language corruption of his own name).  As an alternative means of concealing the income, he sent some money directly to one of two brokerage accounts where he used the money to purchase investments.

Wilson incorporated his medical practice as Women's Health Care, Inc. (WHC) in 1990, electing to treat it as a subchapter S corporation.  According to Wilson, WHC last filed a return in 1996, although it was dissolved in 1997.  The same day WHC was dissolved as a corporate entity, Wilson registered the trade name "Women's Health Care" with the state.  Following dissolution, Wilson ran his medical practice as a sole proprietorship, but apparently continued using the corporate name.  WHC filed Forms 1040NR for the years 1996 through 2001.  For 1998 and 1999, the Forms 1040NR identify WHC as a trust with Allen Resources as the trustee, with an address of GPO Box 3653, Hong Kong.  WHC reported an adjusted gross income of $452,052 and $391,426 for each of those years, respectively.  The returns also claim itemized deductions in those same amounts, resulting in no taxable income.  The deductions are based on distributions

2

from the WHC trust to a beneficiary, Kennedy Ventures, 228
Queen's Road East, 3rd Floor, Wanchai, Hong Kong.

Kennedy Ventures reported an adjusted gross income of
$452,052 and $391,426 for each of the prosecution years,
consistent with the Schedules K-1 attached to the returns of WHC.
And the returns claim miscellaneous itemized deductions for all
of Kennedy Ventures' income, because, as the returns purport, all
of the income was distributed to a beneficiary, Bowen
Enterprises, at 143 Queen's Road East, Wanchai, Hong Kong.
(Schedules K-1 attached to Forms 1040NR). The fiduciary for the
Kennedy Ventures Trust is Cumberland International, listed at the
same 228 Queen's Road East address.

Bowen Enterprises however, did not file a U.S. tax
return. Consequently, all of the income attributable to Wilson's
medical practice was not reported, nor were all taxes due paid.
Given that WHC was no longer an existing corporation, or
alternatively, that it had elected to file as a subchapter S
corporation, the receipts of Wilson's practice should have been
reported on his individual income tax returns. After obtaining
extensions, Wilson timely filed Forms 1040 for 1998 and 1999,
which reported adjusted gross incomes of $53,866 and $33,566,
respectively, for which Wilson paid a total of $18,984 in taxes.

As previously mentioned, Wilson also opened two
brokerage accounts in the name of WHC, one at Lind-Waldock &

3

Company and another at Jack Carl Futures/Man Financial, Inc.   For 1998 and 1999, the special agent's analysis indicates that Wilson directed approximately $643,000 from the WHC trust/general operating account # 230802001-0 (the "2308 account") at U.S. Global Investors Bank to these brokerage accounts where he used the money to buy high-risk securities.

Further analysis of the WHC 2308 account revealed that Wilson wrote a number of checks from there payable to "Allen Resources Co. Ltd. - WHCI."  Those checks were deposited into an account at the Hong Kong Shanghai Banking Corporation ("HKSBC") in Hong Kong, as demonstrated by the information contained on the backs of the cancelled checks.  Wilson likely directed the money from HKSBC to account #52-003268-3 (the "3268-3 account") at American Savings Bank in Hawaii.  The defendant's funds deposited to the HKSBC account were then directed back to Wilson's domestic account.  The evidence shows that he transferred money to HKSBC from the WHC account, which was succeeded by transfers from HKSBC back to the 3268-3 account that he controlled.

The domestic 3268-3 account was opened in the name of Etienne Burgos, the alias used by Wilson.  The special agent had difficulty confirming that the account was opened by Wilson because the bank could not locate a signature card. Nevertheless, witness interviews and financial documents show that Wilson used the 3268-3 account to pay for a number of

4

personal expenses, including day-to-day living expenses, a
mortgage, and school tuition for his children.

Relying upon the bank deposits method of proof, Wilson
is responsible for a loss of $217,703 for the tax years 1998 and
1999.  This figure assumes a prosecution under 26 U.S.C. §
7206(1).

II.  PERTINENT LAW

A.  Elements of 26 U.S.C. § 7206(1)

The defendant is charged in Counts 1 and 2 of the
indictment with filing a false tax return in violation of Section
7206(1) of Title 26 of the United States Code.  In order for the
defendant to be found guilty of that charge, the government must
prove each of the following elements beyond a reasonable doubt:

First, the defendant made and signed a tax return for
the years 1998 and 1999 (charged in the indictment) that he knew
contained false information as to a material matter;

Second, the return contained a written declaration that
it was being signed subject to the penalties of perjury; and

Third, in failing the false tax return, the defendant
acted willfully.

B.  Willfulness

Willfulness requires a "voluntary, intentional
violation of a known legal duty."  United States v. Pomponio, 429
U.S. 10, 12 (1976); United States v. Powell, 955 F.2d 1206, 1210

(9th Cir. 1991); United States v. Tucker, 133 F.3d 1208, 1218 (9th Cir. 1998). Thus, it is necessary to show proof of the defendant's intent to violate the law or knowledge that his actions would do so. Pomponio, 429 U.S. at 12. This creates a burden to show that the defendant was aware of his obligations under the tax laws. United States v. Conforte, 642 F.2d 869, 875 (9th Cir.), cert. denied, 449 U.S. 1012 (1980). This does not, however, require that defendants act with an "evil motive or a bad purpose." Pomponio, 429 U.S. at 12; United States v. Latham, 754 F.2d 747, 750 (7th Cir. 1985).

The purpose of the willfulness element in tax offenses is to protect people who have misconstrued their duty under the tax code because of its complicated nature. Cheek v. United States, 498 U.S. 192, 205 (1991).

Proof of willfulness normally is through circumstantial evidence. United States v. Marabelles, 724 F.2d 1374, 1379 (9th Cir. 1984). This includes any conduct the likely effect of which is to mislead or conceal. Black v. United States, 309 F.2d 331, 342 (8th Cir. 1962). Receipt of substantial income also tends to show that a failure to file an honest report was willful. United States v. Harris, 726 F.2d 558, 560 (9th Cir. 1984). In addition, the educational and business background of a defendant may support a finding of willfulness. United States v. Bressler, 773 F.2d 287, 291 (7th Cir. 1985); United States v. Ostendorff,

6

371 F.2d 729, 731 (4th Cir. 1967); United States v. McLeod, 436
F.2d 947, 949-50 (8th Cir. 1971).

C.   Materiality

A matter is material if it has a natural tendency to
influence or was capable of influencing the ability of the IRS to
audit or verify the accuracy of the tax return or a related
return, that is, it is material if it is necessary to determine
whether or not there is any tax liability. United States v.
Gaudin, 515 U.S. 506, 509 (1995).

III. METHOD OF PROOF

A.   Bank Deposits Method

To establish the defendant's gross income for the years
1998 and 1999, the government will rely on proof by the so-called
"bank deposits method" of determining income during a particular
period.   This "bank deposits method," is an indirect or
circumstantial way to reliably determine income.

The theory of this method-of-proof is that, if a
taxpayer is engaged in an activity that produces income and if
that taxpayer periodically deposits money in bank accounts under
the taxpayer's name, or under the taxpayer's control, it may be
inferred, unless otherwise explained, that these bank deposits
represent taxable income.

In this method of proof, a taxpayer's bank deposits for
the tax year are totaled, with adjustments made for funds in

7

transit at the beginning and again at the end of that year. Any "non-income" deposits are excluded from this total and income which has not been deposited is included in the total. This procedure provides a gross income figure.

## IV.  EVIDENTIARY ISSUES

### A.  Business Records

The United States expects to offer into evidence financial records made and kept in the regular course of business under the Federal Rule of Evidence 803(b)(6). These records were obtained from banks, credit card companies, and other businesses. When seeking to introduce documents under the exception to the hearsay rule in Rule 803(b)(6), the United States must produce the custodian or other qualified witness to testify that the documents were made and kept in the regular course of business. This witness need not have actual knowledge of the treatment of the specific documents in question and need not know who actually made and kept the records. United States v. Bassey, 613 F.2d 198, 201 n.1 (9th Cir. 1979), cert. denied, 446 U.S. 919 (1980). It is not necessary to identify, locate, or call as a witness the person who actually made or kept the records. Challenges to the accuracy or completeness of the business records do not affect their admissibility. Rather, they concern merely the weight to be given to the evidence. La Porta v. United States, 300 F.2d 878, 880 (9th Cir. 1962).

8

Furthermore, under Rule 1003 of the Federal Rules of Evidence, a duplicate, such as a photocopy, has the same status as an original unless: (1) there is a genuine question as to the authenticity of the original, or (2) it would be unfair to admit the duplicate in lieu of the original. In this case, the United States will seek to admit the Bates-stamped copies of the financial records that were previously turned over to the defense in hard copy.

B.    Summary Witness and Summary Charts

Near the end of its case, the United States intends to call a summary witness trained in taxation and accounting. This witness will sit throughout the trial and provide an analysis of the numerous financial records introduced into evidence. The purpose is to assist the Court and the jury through what may be at times confusing and complicated financial evidence. This summary witness is expected to provide an analysis of the numerous financial records introduced into evidence and explain to the jury the tax consequences of the United States' evidence.

The introduction of testimony from a summary witness has been approved by the Ninth Circuit in criminal tax prosecutions. United States v. Soulard, 730 F.2d 1292, 1300 (9th Cir. 1984). The defendant in Soulard unsuccessfully challenged the Honorable District Court Judge Harold M. Fong's decision to permit an IRS agent to summarize testimony introduced during the trial. Id. at

9

1299. The Ninth Circuit affirmed the trial court's "wide discretion" to admit testimony from the United States' summary witness. Id. at 1299-1300. Likewise, the admission of testimony of this nature has been upheld in other tax prosecutions when challenged. United States v. Marchini, 797 F.2d 759 (9th Cir. 1986), cert. denied, 479 U.S. 1085 (1987); United States v. Harenberg, 732 F.2d 1507, 1513-14 (10th Cir. 1984); and United States v. Schafer, 580 F.2d 774, 778 (5th Cir.), cert. denied, 439 U.S. 970 (1978).

As addressed in Marchini and cases cited within, a court can easily ensure that the summary witness will testify only to evidence adduced at trial and be subject to thorough voir dire and cross-examination by the defense. Marchini, 797 F.2d at 766. In this case, the United States will introduce voluminous bank records to demonstrate deposits into defendant's accounts. There also will be testimony from various witnesses demonstrating that the bulk of those deposits were made in 1998 and 1999 in return for services provided by the defendant. In addition, the evidence will show the defendant used the deposits as income. The summary witness will prepare charts and diagrams which will reflect evidence received during the trial. Those charts and diagrams cannot be finalized until all the evidence is admitted and, therefore, will not be made available to defendant until shortly before the witness testifies. The Ninth Circuit has

10

found no abuse of discretion where summary charts were admitted into evidence. United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987).

C.    Expert Testimony

When an IRS expert provides opinions based on special knowledge or skills that are helpful to the jury, such opinions are admissible. United States v. West, 58 F.3d 133, 140-41 (5th Cir. 1995). This agent will have reviewed the exhibits and should be allowed to remain in the courtroom during the trial so that she may hear the testimony of the other witnesses. Marchini, 797 F. 2d at 765-66.

D.    Certified Records

The United States anticipates offering into evidence certified copies of certain Internal Revenue Service records and State records. These records are self-authenticating and admissible pursuant to Federal Rules of Evidence 902(4), 803(8), and 1005.

E.    Charts

The Government intends to use charts during its opening statement, examination of witnesses, and in closing argument. The use of charts is well-established in the Ninth Circuit. United States v. Johnson, 594 F.2d 1253 (9th Cir. 1979); United States v. Soulard, 730 F.2d 1292, 1300 (9th Cir. 1984). The

11

purpose of an opening statement is to acquaint the jury with the substance and theory of the case and to outline the forthcoming proof so that the jurors may more intelligently follow the testimony. See, e.g., United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), cert. denied, Gustafson v. United States, 469 U.S. 1189 (1985) (relying on United States v. Dinitz, 424 U.S. 600, 612 (1976)); United States v. DeVincent, 632 F.2d 147, 153 (1st Cir. 1980), cert. denied, 449 U.S. 986 (1980); Foster v. United States 308 F.2d 751, 753 (8th Cir. 1962). Charts are permitted during opening statement when they do no more than assist the jury in understanding the nature of the proof it is about to hear. See United States v. De Peri, 778 F.2d 963, 978-79 (3rd Cir. 1985); United States v. Churchill, 483 F.2d 268, 274 (1st Cir. 1973); United States v. Rubino, 431 F.2d 284, 289-290 (6th Cir. 1970), cert. denied, 401 U.S. 910 (1971).

Courts have repeatedly allowed the use of charts similar to the ones the United States intends to use in this case. See, e.g., United States v. Scales, 594 F.2d at 562 (summary of indictment); United States v. Jennings, 724 F.2d at 441-443 (compilation of 200 pages of material involving substantial amount of mathematical calculations); United States v. Stephens, 779 F.2d at 238 (simple flow charts tracing the defendant's use of loan proceeds). A foundation for the admission of each chart the United States intends to offer will

12

be established through the testimony of a witness or witnesses who will testify that the chart accurately reflects information contained in documents already in evidence or to be received in evidence. See United States v. Lemire, 720 F.2d 1327, 1349 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984); United States v. Scales, 594 F.2d 558, 563 (6th Cir. 1979), cert. denied, 441 U.S. 946 (1979). It is not necessary that the witness presenting the chart be an expert witness or have some specialized knowledge of what he or she is testifying about if the chart does not contain complicated calculations that an expert would need to explain. United States v. Jennings, 724 F.2d 436, 443 (5th Cir. 1984), cert. denied, 467 U.S. 1227 (1984).

        Subject to the court being assured that the United States' charts are accurate, and that each piece of information contained on the charts is supported by admissible documentary or testimonial proof, use of the charts should be permitted. The charts will help the United States marshal the evidence that proves the case.

V.   POTENTIAL DEFENSES

A.   The Trust Defense

        Although a trust may be valid under local law, it may still be disregarded for federal income tax purposes if it is found to lack economic substance. Furman v. Comm., 45 T.C. 360, 364 (1966), aff'd, 381 F.2d 22 (5th Cir. 1967); Markosian v.

13

Comm., 73 T.C. 1235 (1980); Helvering v. Clifford, 309 U.W. 331 (1940). Tax law is determined by federal statutes regardless of what the law of a given state, foreign entity, or the common law, may say.

The tax consequences of a transaction are controlled by its substance rather than by its form. Gregory v. Helvering, 293 U.S. 465 (1935). While a taxpayer has the right to minimize his taxes by any lawful means, he may not "structure a paper entity to avoid tax when that entity does not stand on the solid foundation of economic reality." Zmuda v. Comm., 79 T.C. 714 (1982), aff'd, 731 F.2d 1417 (9th Cir. 1984).

These principles are particularly applicable to trusts because trusts are easily susceptible to manipulation so as to create an illusion. In determining the reality of any situation, a series of related transactions must be viewed as a whole. Lazarus v. Comm., 58 T.C. 854, aff'd, 513 F.2d 824 (9th Cir. 1975). (Step transaction doctrine).

Abusive Trust arrangements typically are promoted by the promise of tax benefits with no meaningful change in the grantor's control over the assets or income streams from such assets. The benefits may come from the fraudulent reduction or elimination of income subject to reporting and tax or from the deduction of expenses paid by the trusts that are not allowable. Such expenses may be the result of personal expenses paid through

14

the trust, assets purchased for the grantor, and the contribution of assets at a stepped up basis. The goal of the abusive transactions would be the reduction of income taxes, employment taxes, and reduction or elimination of estate and gift taxes. The results also would include subterfuge to hide or disguise the ownership of the grantors assets. The owner of an abusive arrangement may not file tax returns and/or may use false tax identification numbers. The false identifications numbers can be used to hide the distributions of income from the abusive arrangement.

The step transaction doctrine is the rule of substance over form and treats a series of supposedly unrelated steps, entities, and transactions as one transaction if the steps are integrated, interdependent, and focus toward a particular result.

When the form of a transaction has not, in fact, altered any cognizable economic relationships, the IRS and the courts will look through the form and apply the law according to the substance of the transaction. (Zmuda). In determining whether a trust exists, consideration of the "motives promoting creation, the relation of the parties, and the other circumstances surround the transaction" are more important than the formalities observed by the parties. Able Company v. Comm., T.C. Memo. 1990-500, 60 TCM 813, 823.

15

B.   Frivolous and Impermissible Defenses

Documents obtained during the investigation suggest that the defendant may rely on a number of impermissible, frivolous defenses that have been unsuccessfully used by tax protesters in similar prosecutions.  These include claims that criminal tax statutes are unconstitutional and that the defendant is not person covered by the internal revenue laws.

1.   Constitutionality of Criminal Tax Statutes

In Cheek, the Supreme Court held that "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard by the jury, and, if they are, an instruction to disregard them would be proper." 498 U.S. at 206.  The Court affirmed the district court's use of the following instruction: "An opinion that the tax laws violate a person's constitutional rights does not constitute a good-faith misunderstanding of the law."  Id. at 204.

Similarly, in Powell, the Ninth Circuit affirmed the following instruction: "Mere disagreement with the law, in and of itself, does not constitute good faith misunderstanding under the requirements of law.  Because it is the duty of all persons to obey the law whether or not they [agree with] it."  955 F.2d at 1212.  The Cheek opinion even went as far as to say that claims of unconstitutionality lessen the likelihood of innocent error and "reveal full knowledge of the provisions at issue and a

16

studied conclusion, however wrong, that those provisions are invalid and unenforceable."  498 U.S. at 205.

## 2.   Jury Nullification

The Court should also preclude the defendant from presenting testimony, evidence, or argument regarding the jury's power of nullification, that is, to decide the case according to its own judgment and conscience, notwithstanding the law.   In United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983), the court of appeals upheld the district court's refusal to allow defendant's attorney to argue jury nullification in his closing statement.   The court explained its holding as follows: "[defendant's] jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their own caprice."  Id. at 106; see also United States v. Powell, 955 F.2d at 1206, 1213 (9th Cir. 1991) (noting that Ninth Circuit "precedent indicates that the [defendants] are not entitled to jury nullification instructions").

## 3.   Reasonable Reliance on Expert Advice

Reasonable reliance on advice of counsel can negate the willfulness element, but it is not an absolute defense.   United States v. Civella, 666 F.2d 1122 (8th Cir. 1981).   A legitimate reliance defense must concentrate on advice received and relied upon before the offenses were completed.   United States v. Cheek, 3 F.3d 1057 (7th Cir.)(defendant simply continued course of

17

conduct he began before attorney "advisors" were consulted),
cert. denied, 510 U.S. 1112 (1993); United States v. Schmidt, 935
F.2d 1440, 1449 (4th Cir. 1991)(requested reliance instruction
rejected because defendant only spoke with accountant after he
had bought abusive trusts and did not discuss the essential
questions of income assignment).

To qualify for a reliance defense instruction, a
defendant must show that there was both 1) a good faith reliance
on a professional and 2) a complete disclosure of all relevant
facts. United States v. Masat, 948 F.2d 923, 930 (5th Cir.
1991)(affirming refusal to give reliance instruction based simply
on letters and legal documents), cert. denied, 508 U.S. 950
(1993). It is proper for the trial court to deny a defendant's
attempt to introduce documents, books, videos, and other
materials into evidence in a tax prosecution. Even if the
defendant may have actually relied on the documents, the
potential for jury confusion is too great. United States v.
Willie, 941 F.2d 1384, 1391 (10th Cir. 1991)(upholding the
refusal to admit a copy of the U.S. Constitution, copies of
various laws, and letters from the defendant to the IRS), cert.
denied, 502 U.S. 1106 (1992).

Actual testimony by a defendant is much more probative
of good faith beliefs than is the mass introduction of tax
protester literature. United States v. Mann, 884 F.2d 532, 538

18

(10th Cir. 1989)("Mann's testimony regarding his views was more
probative than publications"); United States v. Hairston, 819
F.2d 971, 973 (10th Cir. 1987)(defendant testified extensively
about his beliefs, and trial court did not abuse its discretion
by excluding proffered documents); United States v. Hawley, 592
F.Supp. 1186, 1188 (D.S.D. 1984)(refusing to admit entire
I.R.C.), aff'd, 768 F.2d 249 (8th Cir. 1985); see also United
States v. Payne, 978 F.2d 1177, 1182 (10th Cir. 1992)(affirming
denial of defendant's attempt to introduce copy of court opinion,
Irwin Schiff book, Internal Revenue Code, and handwritten
research notes).  But see United States v. Harris, 942 F.2d 1125
(7th Cir. 1991)(failure to file defendant may present evidence of
mistaken good faith belief in tax law's ambiguity, including
expert testimony about case law).

VI.  CONCLUSION

          If the defendant seeks to introduce other frivolous
defenses, besides those anticipated here, the United States will
seek leave to file Motions in Limine regarding the evidentiary
issues raised by those defenses.

          DATED:  July 5, 2006, at Honolulu, Hawaii.

                              Respectfully submitted,

                              EDWARD H. KUBO, JR.
                              United States Attorney
                              District of Hawaii

                         By
                              LESLIE E. OSBORNE, JR.
                              Assistant U.S. Attorney

19

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address on July 5, 2006:

### Served by First Class Mail:

Paul J. Sulla, Jr., Esq.
P.O. Box 425
Laupahoehoe, HI 96764

Attorney for Defendant
STEPHEN B. WILSON

DATED:   July 5, 2006, at Honolulu, Hawaii.

*Gloria Parker*