PAUL J. SULLA #5398
P. O. Box 425
Laupahoehoe, HI   96764
(808) 962-0025

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas   77401
(713) 668-8815
(713) 668-9402 FAX

Attorneys for Defendant
Stephen B. Wilson

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 2 4 2006

at 3 o'clock and 20 min M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § § § | CR. NO. CR05-00342 HG |
| VS. | § § | INDICTMENT |
| STEPHEN B. WILSON, | § § | [26 U.S.C. § 7201] |
| Defendant. | § § | |

**RESPONSE BY JOE ALFRED IZEN, JR. TO COURT'S ORDER TO SHOW
CAUSE DATED AUGUST 8, 2006 WITH SUPPORTING MEMORANDUM OF LAW**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

Counsel, Joe Alfred Izen, Jr. ("IZEN") responds to this

Court's Show Cause Order dated August 8, 2006 as follows:

**FACTUAL ANALYSIS AND BACKGROUND SUPPORTING DISCHARGE OF
ORDER TO SHOW CAUSE DATED AUGUST 8, 2006**

I.

1.  The facts supporting Izen's response to this Court's

Show Cause Order signed August 8, 2006 which, in turn, was based

on allegations of "concern" expressed in the "non-objection"

objection filed by Government counsel, Mr. Les Osborne, are set

out in the Affidavit of Joe Alfred Izen, Jr. with its attached

exhibits filed contemporaneously with this Response.

2.  Izen has had a long history of battles with the Internal

1

1  Revenue Service and its "attorney," the United States Department
2  of Justice Department, Tax Division.  Although government coun-
3  sel, such as Mr. Raum, Mr. O'Reilly, and those Department of
4  Justice higher ups advising them to file misleading and erroneous
5  Motions to Disqualify were forced to swear to uphold the Consti-
6  tution before they could "qualify" for their government jobs and
7  salaries, little respect has been shown by that office (or that
8  of IRS counsel) over the years for the taxpayers/citizens' rights
9  to freedom of speech (in the tax shelter / tax avoidance area) or
10 to remain silent during government criminal investigations.  More
11 recently, Government prosecutors and other counsel's schemes to
12 manipulate a Defendant's access to counsel of choice have been
13 documented and condemned. (KPMG) United States v. Stein, 5105
14 Crim. 0888 (S.D.N.Y., 2006).   Mr. Osborne's reference to an
15 indictment as a basis for disqualification in this case **which was**
16 **dismissed by the Government in 1995, displays an ignorance of, or**
17 **contempt for, the presumption of innocence mandated by the Con-**
18 **stitution.**

19      3.  By purporting to rely on cases in which Izen was in-
20 volved going all the way back to 1982 to support the "concerns"
21 parroted by Mr. Osborne in his "non-objection" objection, the
22 government invites an examination of its past actions before the
23 U.S. Courts.

24      4.  The United States Department of Justice and its client,
25 the IRS, have been at odds with Izen for twenty-six years.  Izen
26 thwarted IRS efforts to chill First Amendment protections of
27 commercial speech by obtaining an acquittal of so-called promot-
28 ers who had been charged and convicted for advising U.S. taxpay-

1    ers on the legal use of foreign trusts to avoid U.S. taxes.
2    Affidavit of Joe Alfred Izen, Jr., Exhibit A.  Izen reversed the
3    Tax Court's decision refusing to grant relief from fraudulent IRS
4    trial and settlement practices which involved the bribing of
5    parties and witnesses to obtain favorable testimony.  Affidavit
6    of Joe Alfred Izen, Jr., Exhibit B.  Izen successfully exposed
7    and reversed the unconstitutional "tax crime exception" to the
8    Fifth Amendment which IRS had illegally and unconstitutionally
9    obtained in the Ninth Circuit.  Affidavit of Joe Alfred Izen,
10   Jr., Exhibit E.  Izen defeated IRS efforts to disbar him before
11   the Internal Revenue Service on the purported basis that he had
12   failed to file his returns during tax years 1995, 1996, and 1997,
13   and, thereafter successfully defended himself against an IRS
14   money laundering sting which the IRS directed against him pur-
15   portedly based on his failure to file.  Affidavit of Joe Alfred
16   Izen, Jr., Exhibit F.  Finally, Izen obtained a reversal of the
17   Dixon Tax Court decision in the Ninth Circuit and forced the
18   government to give his clients the same benefits that it paid the
19   informant witness and party who falsely testified in its favor in
20   the second Dixon decision. Affidavit of Joe Alfred Izen, Jr.,
21   Exhibit G.

22       5.  After its unsuccessful efforts to disbar Izen before the
23   Internal Revenue Service and, thereafter, to frame him in a money
24   laundering investigation brought by agents who had posed as
25   Izen's clients, the government brought unsuccessful Motions to
26   Disqualify Izen in the Dixon Tax Court case and the Henkell and
27   Estate Preservation abusive shelter penalty case, and wrote Izen
28   a letter threatening to attack his right to practice based on his

1    "unfitness."   Affidavit of Joe Alfred Izen, Jr., Exhibits C, D,
2    and I.

3         6.   Shortly after the second <u>Dixon</u> decision on January 17,
4    2003, excoriating their misconduct, government counsel in the
5    <u>Mayer</u> case served Izen  with a motion claiming Izen was unfit "to
6    represent Mayer or any other Defendant."

7         7.   Mr. Raum's (and the government higher ups advising him)
8    claim, in the Tampa Motion to Disqualify that the government
9    "...was unaware of the status of this proceeding..." was false.
10   Government motion, Tampa Proceedings, P. 4, fn. 2.   The govern-
11   ment was a party before the Seventh Circuit and never objected
12   that it was not served with all Seventh Circuit rulings in that
13   case.   Close examination of the Seventh Circuit's orders in the
14   <u>Johnson</u> case belies any government claim that government counsel
15   were not aware before filing the Tampa Motion to Disqualify that
16   **<u>Izen was discharged</u>** from the show cause order directed against
17   him by Circuit Judge Posner **<u>without imposition of any sanctions</u>**
18   **<u>for Izen's appellate conduct.</u>**  Affidavit of Joe Alfred Izen, Jr.,
19   Exhibit H.   Now Mr. Osborne has repeated the same allegations
20   abandoned by Mr. Raum.

21        8.   The government's motion which it filed in the <u>Mayer</u> case
22   contained numerous "errors."   The government claimed:

23        The Eleventh Circuit recently sustained a $9,394.00
         sanction issued by the Tax Court against Izen for
24       repeatedly disobeying discovery and scheduling order.

25   Government motion, P. 3.   **<u>Izen was never sanctioned by the Ele-</u>**
26   **<u>venth Circuit.</u>**   In fact, Izen remains a licensed member of the
27   Eleventh Circuit, and has been licensed in the Eleventh Circuit
28   since its split from the Fifth Circuit over twenty years ago, and

                                    4

recently filed an appellate brief for a taxpayer, without inci-
dent in the case styled <u>Domer L. Ishler v. Commissioner of Inter-</u>
<u>nal Revenue</u>.    (There, as here, the United States, Department of
Justice Tax Division represented the Commissioner. No objection
or ethical charges were made against Izen's appearance.)

    9.   The government has attempted to mislead various Courts
into believing that Izen and his client, Mrs. Johnson, the tax-
payer gravely ill with diabetes, at the time of the Tax Court
case, failed to provide any discovery in the Tax Court case.   In
fact, Izen was sanctioned for failing to provide further answers
to an Interrogatory No. 13.   The Tax Court **never** ruled that the
taxpayer Johnson's invocation of the Fifth Amendment was frivo-
lous.   Tax Court Judge Cohen who levied the $9,394 sanction
claimed that the sanction did not include punishment of any
efforts by Johnson to invoke the Fifth Amendment.

    10.   In light of the government's several unsuccessful
Motions to Disqualify Izen whenever it loses an appeal or has
litigation anxiety and its other efforts to harass, intimidate,
and threaten, Izen by attacking his right to practice, the "non-
objection concerns" submitted by Mr. Osborne come as no surprise.
Mr. Osborne's failure to accurately inform this Court of the
history of the Government's unsuccessful efforts to limit Izen's
practice and to interfere with Izen's representation of his
clients may be intentional or just due to ignorance.   It is
possible that Mr. Osborne's superiors in the Justice Department,
or local "associates" in the IRS, fed him only the information
they wanted him to have hoping that this Court would ignore, or
better yet, never learn of, their past misdeeds.

11.   Mr. Osborne's initial position -- that he felt constrained not to object to Izen's appearance because he had agreed not to object and then failing to keep to his word, exceeds the Government's past misconduct in the Lashlee case.   There the Government threatened to file a motion or objection to interfere with Izen's pro hac vice practice, but did not do so once the plea agreement it wanted was disposed of to its satisfaction. Here, the Government simply misrepresented its true intentions, obtained entry of the plea bargain, and then moved to disqualify Izen surreptitiously by submitting its "non-objection" after the fact.   Defendant Wilson, who relied on Izen's assistance in entering a plea agreement, will now, presumably, be deprived of Izen's assistance at the sentencing by this Government ploy -- a new and even more sinister manipulation of counsel than the tactics displayed in Lashlee.   See Izen Affidavit, Exhibit I.

12.   Mr. Osborne, if he knew the full facts, was aware that the Government's allegations of misconduct had already been fully aired in the Tampa District Court and were barred by res judicata and collateral estoppel. If he did not know the full facts, he should have made proper investigation before leveling the charges.   Nor should Government attorneys be allowed to escape their responsibility placed on the signers of pleadings by the Federal Rules, to make proper investigation and to obtain personal knowledge of the truthfulness and legal viability of charges before making them, through the simple expediency of filing a "non-objection" with the Court and inducing the Court to make common cause with them by issuance of a Show Cause Order.

1 | **MEMORANDUM OF LAW IN SUPPORT OF DISCHARGE OF ORDER TO SHOW CAUSE**

2 |                                       II.

3 | **1.    THE GOVERNMENT'S LETTER OF "CONCERN" FAILS TO COMPLY WITH**
4 | **LEGAL AND FACTUAL STANDARDS OF PROOF REQUIRED BY THIS AND OTHER CIRCUITS.**

5 |        Mr. Osborne's submission puts forth various factual allega-
6 | tions of Izen's misconduct.  The allegations are unsworn hearsay.
7 | Apparently relying on what it feels is its "close relationship"
8 | with the District Court and the credibility of its office, the
9 | Government duped the Court into issuing the August 8, 2006 Show
10 | Cause Order without putting forth complete facts and circum-
11 | stances surrounding its claims.  Mr. Osborne does not claim he
12 | obtained personal knowledge before making the allegations.  Yet,
13 | the Court apparently accepted the allegations as true without any
14 | proof and issued a negatively worded Show Cause Order wrongly
15 | shifting the burden of proof concerning such allegations on to
16 | Izen.

17 |        Surely the Government knew that its motion was not competent
18 | evidence.  Certainly the Government must have been aware that the
19 | factual recitations in the cases it cited were not admissible as
20 | proof in this proceeding.  Wyatt v. Terhune, 315 F.3d 1108, 1114
21 | n. 5 (9th Cir. 2003) (Factual findings in one case ordinarily are
22 | not admissible for their truth in another case through judicial
23 | notice.)

24 |        The Ninth Circuit standard of review for disqualification of
25 | pro hac vice status requires proof of serious misconduct by
26 | counsel which has prevented the orderly administration of justice
27 | in the case under consideration.  Lasar v. Ford Motor Co., 399
28 | F.3d 1101, 1110 (9th Cir. 2005).  Motions Pro Hac Vice are not

1  intended as an avenue for Government counsel to air their past
2  grudges or grievances from other cases which were non-meritorious
3  and which were unsuccessfully litigated.  Kohl v. United States
4  District Court, District of Idaho, 366 F.3d 813 (9th Cir. 2004).

5      Under Schlumberger Technologies, Inc. v. Wiley, 113 F.3d
6  1553 (11th Cir. 1997), a party seeking to bar an opposing counsel
7  from practicing must submit a motion and submit proof which
8  establishes a:

9      ...Showing of unethical conduct rising to a level that
10     would justify disbarment...."
11  Schlumberger at P. 1561.  In making allegations of ethical mis-
12  conduct, the Government bears the burden of proof.  Keepsake,
13  Inc. v. P. S. I. Industries, Inc., 33 F.Supp. 2d 1033, 1037 (M.D.
14  Fla. 1999).  The burden of proof to establish grounds for disqua-
15  lification is on the party moving for disqualification.  Metro-
16  health Ins. Co. v. Anclote Psychiatric Hosp., 961 F.Supp. 1580
17  (M.D. Fla. 1997), Contant v. Kawasaki Motor Corp. USA, Inc., 826
18  F.Supp. 427 (M.D. Fla. 1993); National Union v. L. E. Myers Co.
19  Group, 937 F.Supp. 276 (S.D.N.Y. 1996); Matthews v. Lebouef,
20  Lamb, Greene, & MacRae, 902 F.Supp. 26, 28 (S.D.N.Y. 1995). A. V.
21  by Versace, Inc. v. Gianni Versace, S.P.A., 160 F.Supp.2d 657
22  (S.D.N.Y. 2001).  The Second Circuit recognizes the "restrained"
23  approach to disqualification which prevents the substitution of
24  the District Court for the state or federal disciplinary machin-
25  ery in resolving ethical complaints.  Matthews, supra at P. 28.
26  The Second Circuit's restrained approach is designed to prevent
27  "wholesale filings of motions for tactical reasons." Bottaro v.
28  Hatton Assocs., 680 F.2d 895, 896-97 (2d Cir. 1982).

1    Disqualification of counsel should be used sparingly where
2    it would work substantial hardship on the client. Metrohealth
3    Ins. Co. at P. 1583. Norton v. Tallahassee Memorial Hospital,
4    689 F.2d 938, 941 (11th Cir. 1982) at n. 4.

5    The disqualification of one's chosen counsel is an extraor-
6    dinary measure that should be resorted to sparingly. Metrohealth
7    at P. 1582. An order for disqualification is a drastic means
8    which Courts should hesitate to impose except when absolutely
9    necessary. Freeman v. Chicago Musical Instrument Co., 689 F.2d
10    715, 721-22 (7th Cir. 1982).

11    In determining a Motion to Disqualify, the Court must take
12    into account not only the various ethical precepts adopted by the
13    profession, but also the societal interests at stake. The rule
14    of disqualification should not be mechanically applied. Church of
15    Scientology of California v McLean, 615 F.2d 691, 693 (5th Cir.
16    1980); F.D.I.C. v. U.S. Fire Ins. Co., 50 F.3d 1304 (5th Cir.
17    1995).

18    Mr. Osborne's "non-objection" merely cited the Tax Court
19    Johnson case without accurately stating the final results of the
20    appeal leaving the impression Izen had been sanctioned by the
21    Seventh Circuit. The Government does not explain, as part of its
22    "concerns," why no disciplinary complaints were ever pursued with
23    respect to any of the ancient (or more recent) cases it describes
24    as misconduct, fails to address or even mention the expiration of
25    the statute of limitations for disciplinary purposes on all of
26    the claims arising out of the cases, and, last of all, never
27    addresses how an attorney can defend himself against ethical
28    charges brought, in some cases, more than twenty years after the

9

1   alleged misconduct or on charges arising out of comments made in
2   case decisions which do not specifically address the attorney.

3   **2.    THE GOVERNMENT'S "NON-OBJECTION" IS A THINLY-VEILED EFFORT
        TO INTERFERE WITH THE DEFENDANT'S RIGHT TO COUNSEL OF
4       CHOICE.**

5       All Circuits recognize a Defendant's right to counsel of
6   choice in a criminal case under the Sixth Amendment.  Disqualifi-
7   cation of one's chosen counsel is an extraordinary remedy that
8   should be resorted to sparingly.

9       Potashnik v. Port City Const. Co., 609 F.2d 1101 (5th Cir.
10  1980).  The right also arises out of Fifth Amendment concepts of
11  due process.  Potashnik at P. 1117.  Various Courts have taken
12  Potashnik's principles into account in resolving disqualification
13  motions.  Contant at P. 428.  "Disqualification of one's chosen
14  counsel is an extraordinary remedy that should be resorted to
15  sparingly."

16      The power of Courts to disqualify an attorney from a case is
17  incidental to all Courts and is necessary for the preservation of
18  decorum and the respectability of the profession.  Ex Parte:
19  Burr, 22 U.S. (9 Wheat) 529, 531, 6 L.Ed. 152 (1824) (Marshall,
20  C. J.).  However, the ability to deny one's opponent the services
21  of his chosen counsel is a potent weapon.  Confronted with such a
22  motion, Courts must be sensitive to the competing public interest
23  of requiring professional conduct of an attorney and by permit-
24  ting a party to retain counsel of his choice.  In order to re-
25  solve competing interests, the Court must balance the interests
26  of the public in safeguarding the judicial process with the
27  interests of each party.  Motions for Attorney Disqualification
28  should be viewed with extreme caution for they can be misused as

1   a technique of harassment. <u>Manning v. Waring, Cox, James, Sklar,</u>
2   <u>and Allen</u>, 849 F.2d 222, 224 (6th Cir. 1988). <u>General Mill</u>
3   <u>Supply Co. v. SCA Services, Inc.</u>, 697 F.2d 704, 711 (6th Cir.
4   1982). <u>Panduit Corp. v. Allstates Plastic Mfg. Co.</u>, 744 F.2d
5   1564, 1577 (Fed. Cir. 1984).

6       The Fifth Circuit cautions against an inflexible approach on
7   Motions to Disqualify and requires a "meticulous deference to
8   litigants' rights." <u>F.D.I.C. v. U.S. Fire Ins. Co.</u>, 50 F.3d
9   1304, 1314 (5th Cir. 1995). In the Fifth Circuit the Local Rules
10  of the District Court are relevant in resolving disqualification,
11  but parties can not be deprived of right to counsel of choice on
12  the basis of Local Rules alone.

13      The difficulty in dealing with tactical motions purporting
14  to raise claims of ethical misconduct occurring before far dis-
15  tant Courts was the moving force behind the Second Circuit's
16  adoption of the rule requiring a high standard of proof to dis-
17  qualify a party's chosen counsel. <u>Versace</u> at P. 663. <u>Bottaro</u> at
18  P. 896-97. The government's efforts to manipulate Wilson's choice
19  of counsel and, at the same, retaliate against Izen for past suc-
20  cessful representation should be denied. Wilson is entitled to
21  his counsel of choice, not counsel chosen by the Justice Depart-
22  ment or the IRS.

23  **3. THE GOVERNMENT HAS BROUGHT ITS MOTION AS A TACTICAL PLOY AND
24     IN RETALIATION FOR IZEN'S PAST SUCCESSFUL ADVOCACY.**

25      The government sent its "non-objection" as a tactical ploy
26  and in retaliation for Izen's past successful advocacy. As
27  pointed out in <u>Panduit Corp.</u>, P. 1576, supra:

28      A disqualification order discredits the Bar generally
        and the individual attorney particularly. Thus, while

11

there can be no hesitation to disqualify where impropriety has occurred, as in the cases cited by the parties upholding disqualification -- ...Judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. **The opposite effects are just as likely -- encouragement of vexatious tactics and increased cynicism by the public.**

Government counsel, at least at the high levels of the Justice Department, care little for the rules binding on the local Bar and have even consistently argued, when it suits their purposes, that the ethical rules of Local Bars precluding certain conduct -- such as contacting Defendants in the pre-indictment stage -- do not apply to them. It is but a small step beyond such ploys to attempt to manipulate a Defendant's choice and access to a counsel who would be less favorable to its position than the Government would like. See (KPMG) United States v. Stein, 5105 Crim. 0888 (S.D.N.Y., 2006). (Coercing the companies that normally pay to defend their work force into withholding needed funds for representation.) Here, there are numerous warning signs the Government seeks to taint Wilson's counsel not only in retaliation for Izen's past representation of clients that the Government does not like, but also, to deprive Wilson of experienced counsel who may conceivably prevail on disputed issues which might arise in the sentencing process.

Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny. Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996). See also National Union v. L.E. Meyers Co. Group, 937 F.Supp. 276, 280 (S.D.N.Y. 1996). Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989). Here, the government, through

1  Mr. Osborne, has used the already-litigated "concerns" expressed

2  in his "non-objection" "as a technique of harassment" against

3  Wilson's counsel for retaliatory purposes. Nuri v. P.R.C., Inc.,

4  5 F.Supp.2d 1299, 1304 (M.D. Ala. 1998). As District Judge Miley

5  Thompson observed, Lawyers (such as the government counsel in

6  this case):

> Have discovered that disqualifying counsel is a suc-
> cessful trial strategy, capable of creating delay,
> harassment, additional expense, **and perhaps even re-
> sulting in the withdrawal of a dangerously competent
> counsel.**

10  Nuri at P. 1304. Citing Developments in the Law: Conflict of

11  Interest in the Legal Profession; 94 Harv. L.Rev. 1244, 1285

12  (1981).

13  **4.    THE GOVERNMENT ALLEGATIONS SET OUT IN MR. OSBORNE'S "NON-
OBJECTION" WERE ALREADY FULLY LITIGATED IN THE TAMPA CASE
AND ARE NOW BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL.**

15  A order disqualifying or refusing to disqualify counsel from

16  representing a Defendant in a civil or criminal case is a final

17  order subject to appeal or mandamus. Kohl v. U.S. District

18  Court, District of Idaho, 366 F.3d 813, 818-820 (9th Cir. 2004).

19  The District Court's decision in Mayer denying the Govern-

20  ment's Motion to Disqualify on the same grounds as those put

21  forth in Mr. Osborne's "non-objection" is now a final order which

22  bars the Government from pursuing such allegations in any plead-

23  ing before this Court.

24  Perhaps aware that no attorney on the part of the Government

25  could sign a pleading or an objection which put forth the al-

26  ready-litigated "ethical" claims against Izen, the Government

27  resorted to its tactic of sending a "non-objection" to the Court

28  in an effort to avoid the strictures of pleading which require

13

1  such claims to have a good-faith basis.

2      Rulings on motions, including factual findings as well as

3  conclusions of law, once they become final, are a bar to further

4  litigation. <u>Disimone v. Browner</u>, 121 F.3d 1262, 1266 (9th Cir.

5  1997). As Circuit Judge Ferguson noted in <u>Disimone</u>:

> No litigant deserves an opportunity to go over the same
> ground twice, hoping that the passage of time or
> changes in the composition of the Court will provide a
> more favorable result the second time.

Citing <u>Gindes v. United States</u>, 740 F.2d 947, 949 (Fed. Cir.

1984). Clearly, the Government charges of misconduct levelled in

its "non-objection" in this case were fully aired and litigated

in the Tampa case before Judge Lazzara. The issue in question,

the Government's purported ethical complaints against Izen were

"decided explicitly and/or by necessary implication in the pre-

vious disposition...." <u>Disimone</u> at P. 1266. <u>Milgard Tempering,</u>

<u>Inc. v. Selas Corp. of America,</u> 902 F.2d 703, 715 (9th Cir.

1990). Judge Lazzara, when he overruled the Government's Motion

to Disqualify in an order which became final when the Government

abandoned its appeal in the <u>Mayer</u> case, "actually adjudicated"

the  Government's spurious complaints.  These Government com-

plaints in Mr. Osborne's "non-objection" "were essential to the

judgment in earlier litigation between the parties." The doc-

trine of collateral estoppel bars the Government's efforts at

relitigation in this case. <u>Garrett v. City and County of San</u>

<u>Francisco</u>, 818 F.2d 1515, 1520 (9th Cir. 1987). <u>South Delta</u>

<u>Water Agency v. United States Dept. of Interior</u>, 767 F.2d 531,

538 (9th Cir. 1985).

      The Government's efforts to relitigate the same allegations

it unsuccessfully litigated in Tampa, Florida before Judge Laz-
zara (which are now incorporated in his Final Judgment in the
<u>Mayer</u> case) and Judge Lorenz' denial of the same allegations in
the <u>Evans</u> case are a bar to relitigation of the claims under both
res judicata and collateral estoppel.  See Izen Affidavit, Exhi-
bits L and O.

### <u>CONCLUSION</u>

An examination of this entire record at this point estab-
lishes that this Court was duped into issuing the Show Cause
Order by the Government's failure to responsibly inform the Court
as to the facts surrounding the Government's past, unsuccessful
litigation with Izen over the same charges.  By failing to pro-
vide the Court with balanced and complete information, someone in
the Government or IRS has knowingly violated the ethical stan-
dards of practice which require candor toward the tribunal and
fairness to opposing party and counsel.

Based on all of the above facts and argument, and this
record, this Court should enter an order discharging Izen from
the Order to Show Cause.

Respectfully submitted,

PAUL J. SULLA #5398
P. O. Box 425
Laupahoehoe, HI  96764
(808) 962-0025

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas  77401
(713) 668-8815
(713) 668-9402 FAX
ATTORNEYS FOR DEFENDANT

1

2

## CERTIFICATE OF SERVICE

3       I certify that a true and correct copy of the foregoing
document was sent to Leslie Osborne, Jr., AUSA, Room 6100 PJKK

4   Federal Building, 300 Ala Moana Blvd., Box 50183, Honolulu, HI
96850 by electronic filing and/or U.S. Mail, postage prepaid, on

5   this the 22nd day of August  2006.

6   WILDISO.RSP/TK386                    Joe Alfred Izen, Jr.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28