UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,        CASE NO: 8:03-Cv-415-T-25TGW

        Plaintiff,

VS.                                        Tampa, Florida
                                           May 1 2003
GREGORY T. MAYER d/b/a,                    9:00 a.m.

        Defendant.
_____/


TRANSCRIPT OF MOTION PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. LAZZARA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

Counsel for Plaintiff:    **MICHAEL S. RAUM, ESQUIRE**
                          U. S. Department of Justice
                          Tax Division
                          P. O. Box 7238
                          Washington, DC  20044
                          202-353-3922


Counsel for Defendant:    **JOE A. IZEN, JR., ESQUIRE**
                          5222 Spruce Street
                          Bellaire, Texas 77401
                          713-668-8815
                          **JOSEPH D. STEWART, ESQUIRE**
                          2671 Airport Road South
                          Suite 302
                          Naples, Florida  34112-4810
                          941-775-4450


Court Reporter:           **CLAUDIA SPANGLER-FRY, RPR, CM**
                          Official Court Reporter
                          801 North Florida Avenue
                          Room 1548
                          Tampa, Florida  33602
                          813-301-5575


EXHIBIT
L

CLAUDIA SPANGLER-FRY,              S. COURT REPORTER

2

P R O C E E D I N G S

*May 1, 2003*

* * * * * *

1   THE COURT:  Call the case please, Madam Clerk.

2   THE CLERK:  Clerk 8:03-Civil-415 T-26TGW, United

3   States of America versus Gregory T. Mayer, et all.  Counsel,

4   please state your appearances.

5   MR. RAUM:  Michael Raum of the Justice

6   Department's tax division on behalf of the United States.

7   MR. IZEN:  Joe Alfred Izen, Jr. on behalf of

8   Defendant, Gregory Mayer in this action who is here

9   personally to my right, Your Honor, far right.

10   MR. STEWART:  Joe Stewart, local counsel.

11   THE COURT:  All right.  Mr. Stewart, which firm

12   are you with?

13   MR. STEWART:  I'm pleased to say, I'm a sole

14   practitioner, Judge.

15   THE COURT:  Okay.  You entered a notice of

16   appearance yet?

17   MR. STEWART:  I have it with me, Judge.

18   THE COURT:  Would you -- Ted would you get it?

19   Are you a member of the bar of this Court?

20   MR. STEWART:  In good standing, Judge.

21   THE COURT:  Okay.

22   MR. STEWART:  There are a number of copies there I

1    intended to serve on counsel for the United States.

2            THE COURT:  Okay.  Mr. Raum.

3            MR. RAUM:  Yes, sir.

4            THE COURT:  Any objection to Mr. Stewart coming

5    in?

6            MR. RAUM:  No, Your Honor.

7            THE COURT:  Okay.  Are you from Naples?

8            MR. STEWART:  Indeed I am, Judge.

9            THE COURT:  All right.  Come a long way.  All

10    right.  You practice before Judge Steele down there?

11            MR. STEWART:  I do, Judge, and also, the late

12    Judge Gagliardi.

13            THE COURT:  Oh yeah.  God bless him.  He sure was

14    a help to us.  Okay.

15            Mr. Raum, you have a Motion to Disqualify

16    Mr. Izen?

17            MR. RAUM:  Yes, Your Honor.

18            THE COURT:  Go ahead.

19            MR. RAUM:  Thank you, Your Honor.

20            THE COURT:  First of all, has he ever been

21    disbarred in any Court?

22            MR. Izen:  You mean me; no.

23            THE COURT:  Sit down.  Mr. Izen, sit down and make

24    yourself comfortable.

25            He ever been barred to your knowledge?

*CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER*

4

1          MR. RAUM:  I'm not aware of any disbarment.

2          THE COURT:  Has he ever been suspended?

3          MR. RAUM:  I'm not aware.

4          THE COURT:  okay.  So, you want me to disqualify

5    him in this case because of the Seventh Circuit, through

6    Judge Posner, upheld a sanction order by the Tax Court?

7          MR. RAUM:  That's the basis of our motion here and

8    we're trying to limit the discussion to --

9          THE COURT:  Tell me, what ever happened to that

10   order to show cause issued by the Seventh Circuit?

11         MR. RAUM:  Your Honor, I need to apologize for

12   that.  I filed -- my footnote stated the United States was

13   unaware of that order to show cause.  It should have said

14   counsel for the United States is unaware.  That's the truth.

15   I didn't know.

16         THE COURT:  Wait a minute.  You work for the

17   Department of Justice, right?

18         MR. RAUM:  I do, Your Honor.

19         THE COURT:  Is the Department of Justice

20   representing the Government in that other case?

21         MR. RAUM:  Your Honor, I admit to making a mistake

22   in not contacting that counsel.

23         THE COURT:  Another mistake you made.  I'm reading

24   your memo and all of a sudden you lead me to believe -- I

25   assume it is inadvertent that the Seventh Circuit opinion

5

1　was an Eleventh Circuit opinion.

2　　　　MR. RAUM:  Your Honor, that's a typographical

3　error.  I believe the context --

4　　　　THE COURT:  That's one great typographical error.

5　　　　MR. RAUM:  Yes, Your Honor.  I believe the -- I

6　regret that error.  I always regret having to apologize for

7　mistakes, of course.  I believe the context of the

8　discussion there makes clear it's the Seventh Circuit.  The

9　citation is to a Seventh Circuit case, the next sentence

10　says Seventh Circuit.

11　　　　THE COURT:  Have you filed any other Motion to

12　Disqualify him in any other Court?

13　　　　MR. RAUM:  I have personally not, no.

14　　　　THE COURT:  Department of Justice?

15　　　　MR. RAUM:  Mr. Izen, perhaps, would be better to

16　answer that.

17　　　　THE COURT:  I'm asking you.  You're with the

18　Department of Justice.

19　　　　MR. RAUM:  I am, Your Honor.

20　　　　THE COURT:  I mean, I assume you have to go get

21　some authorization before you file this kind of a motion.

22　　　　MR. RAUM:  Yes, Your Honor.

23　　　　THE COURT:  Okay.  Did you ask; have we filed any

24　other motions against Mr. Izen?  Have they been successful,

25　unsuccessful?

6

```
1          MR. RAUM:  I know that Mr. Izen has a long history
2   of litigating against the Department.  I believe there are
3   other Motions to Disqualify.  I wanted --
4          THE COURT:  Have they been successful?
5          MR. RAUM:  I'm not aware.
6          THE COURT:  Mr. Izen, have they been successful?
7   You don't need to keep -- just sit down.
8          MR. IZEN:  No.  Your Honor, the only motion out of
9   about the fifth one -- this is the fifth one that was
10  successful, it had nothing to do with ethics, except that it
11  was one in the Eastern District of California based on me
12  representing too many potential witnesses who might be
13  called to a criminal trial.
14         THE COURT:  So you were disqualified?
15         MR. IZEN:  I was disqualified that one time, and I
16  was allowed to appear in that same Court on an abusive
17  shelter penalty case where I had not represented --
18         THE COURT:  Have other Motions to Disqualify been
19  filed against you based on the same grounds in this motion?
20         MR. IZEN:  None.
21         THE COURT:  All right.
22         MR. IZEN:  Unfitness.  There's been one other.
23         THE COURT:  No, no.  They are alleging that I
24  should disqualify you here because by virtue of the Seventh
25  Circuit opinion that would subject you to being disbarred
```

*CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER*

7

1    here in the State of Florida.   Anybody -- has he filed any

2    other kind of motion?

3          MR. IZEN:  None.  I've continued to appear before

4    the same Court -- the Tax Court that has sanctioned me five

5    or six times.  I've settled cases.  I've tried cases.

6    There's been no charges.  Even the Judge that sanctioned me

7    brought no charges, Judge Cohen of the Tax Court.   The

8    Seventh Circuit brought no charges.  I was discharged for --

9          THE COURT:  I know.  I got that.  By the way,

10    what's happening with your Bivens Action in Texas?

11          MR. IZEN:  It's back up on appeal to the Fifth

12    Circuit.

13          THE COURT:  'Cause I -- you know, I Shepardized

14    that case, and I noted that on remand, the District Judge

15    granted the Government's Motion to Dismiss and --

16          MR. IZEN:  Qualified immunity one more time.  It's

17    been granted twice now.  I have to appeal again.

18          THE COURT:  Mr. Raum, you want me to disqualify

19    him because the Eleventh -- the Seventh Circuit upheld a

20    sanction order of the Tax Court?

21          MR. RAUM:  It's the motion we made, Your Honor.  I

22    recognize it's a -- I recognize it's a difficult stretch.

23    It's a difficult burden for the United States to bear.

24          THE COURT:  Then why did you file the motion?

25    Then you precipitate his Motion for Sanctions, and on and on

1  and on.  Listen, I'm going keep my eye on this case.  I

2  don't want any contentiousness in this case.  It's going to

3  be litigated like any other case in front of me.  This is

4  now on my radar screen.  All right.  I don't mind advocates

5  representing the interest of their clients zealously, but

6  what I do not like is a needless expenditure of clients' and

7  judicial resources.

8          I'm going to deny both motions, your Motion to

9  Disqualify, and your Motion for Sanctions.  I don't find

10  that this motion was vexatious.  There obviously was a basis

11  for that Seventh Circuit opinion, and I think it would be a

12  real stretch for me to disqualify Mr. Izen.  You analogize

13  to the _Kline_ case out of the Florida Supreme Court.  What

14  Mr. Kline did was outrageous and egregious.  It doesn't even

15  -- and what Mr. Izen did in this case as reported by the

16  Seventh Circuit doesn't even reach that level, and I doubt

17  -- and I have been in Florida's Disciplinary System --

18  Circuit Judges are referees, and I was a Circuit Judge in

19  the State System and I refereed, if you will, a couple of

20  these bar disputes, and you make a recommendation to the

21  Florida Supreme Court and they either uphold it or modify it

22  or reverse it.  And one thing I was taught was you got to --

23  you have to look at all the cases, there is a personality

24  aspect to it, and I don't know that Mr. -- even in this

25  case, whether Mr. Izen would have been subject to a

1   recommendation of suspension -- you know, maybe a reprimand.

2   But it doesn't rise to the level of me having to disqualify

3   him in this case.  The Motion to Disqualify is denied.

4        Again as I said, I don't find that the United

5   States engaged in vexatious conduct to the extent I should

6   sanction.  So, the Motion for Sanction is denied.

7        Now, let's get to the heart of this case.

8   Mr. Raum, so this record is clear, what is it -- what

9   records do you want Mr. Mayer to produce?

10       MR. RAUM:  At a minimum, he should produce the

11  list required by Section 6107, a list of customers for whom

12  he's prepared returns for the last three years.  That's

13  required of all income tax return preparers, exempted from

14  the Fifth Amendment by the required records exception.

15  That's the first step, and that's a minimum.

16       There's also a discovery request which obviously

17  went further and sought to secure a broader class of records

18  which identify his customers.  That is a broader request,

19  and we believe it's appropriate and subject to discovery --

20  subject, of course, to the Court's Fifth Amendment rulings.

21       THE COURT:  Mr. Izen, why is it that I shouldn't

22  grant the request -- no, you can stay there.  I recognize

23  that you've just had surgery on your knee, and you're still

24  hobbling around.

25       With regard to the first category, why aren't

1   those producible?

2           MR. IZEN:  The answer is, Your Honor, we want to

3   challenge the constitutionality of the Justice Department's

4   interpretation of the required records exception.  This

5   gentleman cites two Federal Supplement cases claiming that

6   section of the statute is enforceable.  I've read the cases.

7   I have not done my brief yet on the required record

8   exception, but this is not a drug case, this is not a case

9   where the Government licenses tax preparers, this is not a

10  case --

11          THE COURT:  Hold on.

12          MR. IZEN:  This is not -- is this better?  This is

13  not a drug case, this is not a privilege case where the

14  Government's granted anybody any privilege.  They don't

15  license tax return preparers.  You can have a kindergarten

16  education and prepare tax returns.

17          Now, it is true that Congress passed a statute

18  that requires this, but there is also case law such as

19  Grosso and the others that he cited from the Supreme Court

20  that stand for the proposition that you cannot legislate

21  away the Fifth Amendment.

22          Now, we've come here today prepared to give all

23  this information to the Court for purposes of determining

24  whether there's a Fifth Amendment privilege.  If there's not

25  a Fifth Amendment privilege, obviously, we don't have to

1    worry about the records exception.

2         You have the concerns with the *Castaqar versus*

3    *United States* as to whether he's erroneously compelled

4    today, such as what was with Oliver North, where it ruined

5    their case because he was testifying in front of Congress

6    under threat of contempt, okay, but if we get the Fifth

7    Amendment out of the way and we're left with the records

8    exception, what we're going to be asking the Court to do is

9    simply hold the records and let us appeal the issue of

10    whether this is enforceable.

11         THE COURT:  I've got to hold them in contempt

12    first.

13         MR. IZEN:  Yes, sir.  If you don't, they say we

14    don't have anything --

15         THE COURT:  That's right.  I have to hold them.

16         MR. IZEN:  I'm prepared to go to the highest Court

17    in the land --

18         THE COURT:  I'm sure you are.

19         MR. IZEN:  -- to say this is an unconstitutional

20    grab to circumscribe the Fifth Amendment.  If there's not

21    some limits on this records exception, then they can claim

22    that anytime they want to abridge the Fifth Amendment.

23         Now, there's also another case that says that

24    private papers are subject to the Fifth Amendment if they're

25    for sole propriety.  That's *Bellis versus the United States*,

1    B-E-L-L-I-S.  It's a very old case.  They like to go by Doe

2    and say that nobody has an interest in any papers if they

3    seize them by search warrant or whatever.  These issues are

4    sort of interrelated, but this is an important enough issue

5    and it's not a frivolous issue that I believe that the

6    Eleventh Circuit should be able to speak on it.  That is if

7    you determine that there is a bona fide Fifth Amendment.  I

8    would request, and I've tried --

9           THE COURT:  Well, let me ask -- Mr. Raum, do you

10   contest the bona fide -- of him invoking the Fifth

11   Amendment?

12          MR. RAUM:  As to whether he has a legitimate fear

13   of prosecution; no, I do not.

14          THE COURT:  Okay.  Do you contest the fact that

15   his production of these records are -- would incriminate him

16   or would be a link in the chain?

17          MR. RAUM:  In the Active Production Doctrine?

18          THE COURT:  Yeah.

19          MR. RAUM:  I believe that -- well, I believe the

20   6107 list is exempted from that discussion.

21          THE COURT:  No, no.

22          MR. RAUM:  As to the others --

23          THE COURT:  Let's assume that the first category

24   is not -- is not exempted by the public records, I mean by

25   the -- what do I want to say -- the Required Records

13

1   Exception.  All right.  Would the production of those

2   documents be an incriminatory act on his part?

3           MR. RAUM:  Yes.  I believe he has an active

4   production claim as to some records.  There are some

5   limitations, but yes.

6           THE COURT:  Okay.  Assuming the first category,

7   the Required Records Exception doesn't apply, that would

8   incriminate him, wouldn't it?  I read your complaint.  Seems

9   to me --

10          MR. RAUM:  Yes.

11          THE COURT:  -- if he produced those documents to

12  you, it would incriminate him.

13          MR. RAUM:  Yes, I believe he has a legitimate

14  Fifth Amendment concerning -- this is the proper forum for

15  discussing it.

16          THE COURT:  All right.  Well, then -- I mean, do I

17  have to have this hearing in camera where -- because, I

18  mean, if the Government is conceding, Judge, he produces all

19  those records, he's incriminating himself; all we get to

20  then is the first category, and if I say the Required

21  Records Exception applies, he's got to produce those.  Based

22  on the second category, it seems to me you're telling me,

23  Judge, he produces those, he's going to be incriminating

24  himself.  I have to sustain his objection to that, to the

25  production, it seems to me.

1        MR. IZEN:  Your Honor, may I make one thing clear?

2        THE COURT:  Yes.

3        MR. IZEN:  The <u>United States versus Hubble</u>, a

4   concurring opinion of two Judges of the Supreme Court, made

5   it clear that they were open to reconsider the issue of

6   whether the contents of the documents themselves, and not

7   just the act of production, was privileged.  And that has to

8   do with proprietors such as Mr. Mayer, and we want to

9   challenge --

10        THE COURT:  Well, wait a minute.  Mr. Mayer is a

11  sole proprietor, is he not?

12        MR. IZEN:  Yes, he is.

13        THE COURT:  Seems to me, he would have a Fifth

14  Amendment privilege, not only based on the act of

15  production, but what's in those documents.

16        MR. IZEN:  The Government contests and says that's

17  not correct.  I just heard out of his mouth the acts of

18  production.

19        THE COURT:  No, no.  He conceded that.  I was just

20  thinking about the act of production.  I wasn't even

21  thinking about the contents.

22        MR. IZEN:  Okay.

23        THE COURT:  I mean, I just assumed that what's in

24  there could be used against him.

25        MR. IZEN:  And with your permission, one other

1    point --

2        THE COURT:  Yes.

3        MR. IZEN:  -- on this.  That is that why would you

4    want to review records in camera.  We do not want to reveal

5    the contents of all these records to the public in order for

6    it to be determined whether the required records exception

7    applies to some, but not to others.  That is a concern.  So,

8    that might still leave some ground for in camera review.  If

9    not, you questioning the witness looking through the

10   records, at least you're looking at the records.

11       THE COURT:  Well, as I understand it, what the

12   Government contends is exempted from the Fifth Amendment is

13   a list of his customers for whom he prepared returns for the

14   last three years.  That's what they want.

15       MR. IZEN:  We brought much more than that with us.

16   We brought physical returns that he prepared.  You signed a

17   very broad, in my interpretation, order of a 10-day

18   production based on ex parte presentation by the Government

19   which represented certain facts.  We came here prepared with

20   the tax returns themselves, which arguably are in possession

21   of the Government.  They may claim they can't find -- it's

22   so difficult to find them in the Government filing system

23   that that's legally tantamount to them not possessing them.

24   We have that.  We do have this list of customers.  We have

25   everything.

16

1      THE COURT:  Have you broken them out into two

2  categories?

3      MR. IZEN:  You mean what would be required and

4  what wouldn't?

5      THE COURT:  Yes.

6      MR. IZEN:  We have not.

7      THE COURT:  You haven't done that?

8      MR. IZEN:  No, sir.

9      THE COURT:  They're in these two banker boxes

10  there?

11      MR. IZEN:  Yes, sir.

12      THE COURT:  Well, I'm here.  I'm always for saving

13  time.  Are both of you prepared to stipulate that Mr. Mayer

14  would have a right to invoke the Fifth Amendment just based

15  on the act of production of all records that have been asked

16  for?  I assume you agree with that, Mr. Izen.

17      MR. IZEN:  Yes, sir, I do.

18      THE COURT:  You have a problem with that?

19      MR. RAUM:  I have a small problem, and I can

20  explain it quickly.  The United States filed a motion to

21  amend the complaint, to add some entities as Defendants --

22      THE COURT:  Well, I granted that.

23      MR. RAUM:  Okay.  And that's relevant because

24  those entities don't have Fifth Amendment protection.  I

25  don't know what's in the box.  If those are the papers that

1   belong to the entities, they don't have Fifth Amendment

2   protection.  Now, they're not parties if they haven't been

3   served, they are not subject to the order, but they

4   shouldn't be blessed with the Fifth Amendment production at

5   this pointed because more than likely Legal Tax Newsletter

6   does not have Fifth Amendment protection.

7          THE COURT:  Well, I'm talking about Mr. Mayer.

8          MR. RAUM:  If it's limited to the documents that

9   belong to Mr. Mayer himself, then I'd be prepared to so

10  stipulate.

11         THE COURT:  Well, whose documents are those?  Are

12  you contend -- Mr. Izen, do you know?

13         MR. IZEN:  They're just Mr. Mayer's, personally.

14         THE COURT:  All right.  Okay.

15         MR. IZEN:  I did discuss with Mr. Raum serving

16  Moxley and the other, and I provided him, I think, with

17  information about Moxley being a Delaware Corporation.  I've

18  cooperated with him wherever I could.  I assume he'll be

19  served.  I do recognize the Collective Entity Exception to

20  the Fifth Amendment.

21         THE COURT:  Whoa, whoa.  We're not there yet.

22  Those people are not before me.  They haven't been served.

23  We have enough to do dealing with Mr. Mayer.

24         MR. IZEN:  Yes, sir.

25         THE COURT:  So that I understand it then, both

18

1    parties stipulate and agree that the mere act of production

2    by Mr. Mayer, personally, of the documents that will be

3    turned over to me now, that act of production as to all the

4    records the Government seeks would be the basis for a

5    legitimate invocation of the Fifth Amendment privilege.

6    Agree, Mr. Raum?

7            MR. RAUM:  Assuming the records are responsive,

8    yes.

9            THE COURT:  Okay.  Mr. Izen, I assume they're

10   responsive.

11           MR. IZEN:  Yes, sir.

12           THE COURT:  Okay.  All right.  So then, the only

13   thing that I need to decide is whether or not the first

14   category of records that Mr. Raum seeks on behalf of the

15   Government, that is, the list of his -- of Mr. Mayer's

16   customers for the last three years for whom he prepared tax

17   returns falls within the required -- I mean, the Required

18   Records Exception.

19           MR. IZEN:  Yes, sir.

20           THE COUR:  Have I framed the issue, Mr. Raum?

21           MR. RAUM:  I believe so, Your Honor, yes.

22           THE COURT:  Okay.  All right.  And I think we're

23   set for appellate review now.

24           MR. IZEN:  Yes, sir.

25           THE COURT:  Okay.  Without me -- you can give me

1   the records, and I'm certainly going to in camera them. I

2   sure wish you had broken them out.

3        MR. IZEN: I'll be happy --

4        THE COURT: Although, you know something, I don't

5   even know that it's necessary for me to look at the records

6   because this is really a question of law when you look at

7   it. Does that first category, which the Government seeks of

8   documents -- which the Government seeks, does it fall within

9   the Required Records Exception? If it does, I'll order

10  production of it. If it doesn't, I don't order production.

11       MR. IZEN: The statute itself, Your Honor,

12  describes the content of what records should be produced in

13  that limited instance.

14       THE COURT: Well, let me ask you this -- now, you

15  haven't -- you really haven't filed a brief with regard to

16  this issue, have you?

17       MR. IZEN: No, sir.

18       THE COURT: Okay.

19       MR. IZEN: I'd request the opportunity to brief.

20       THE COURT: Oh, yeah. No, no, no. This is an

21  important issue, and I fully expect that you'll take this to

22  the highest Court.

23       MR. IZEN: Yes, sir.

24       THE COURT: All right. And I'll be quite frank

25  with you, and I recognize the Required Records Exception,

1    but still it's bothersome to me.  You know, it was still

2    bothersome to me, and I'm not prejudging anything.  Only

3    cases you been able to find are out of District Courts?

4              MR. RAUM:  Two District Court cases, although that

5    pertains to this particular statute.

6              THE COURT:  Okay.

7              MR. RAUM:  There's lots of required records cases

8    with different --

9              THE COURT:  I know.  You want an opportunity to

10   brief it some more?

11             MR. RAUM:  Uh --

12             THE COURT:  It's up to you.

13             MR. RAUM:  We have already briefed it.  Perhaps,

14   though, a response from Mr. Izen or reply essentially --

15             THE COURT:  Okay.  When can you file your brief,

16   Mr. Izen?

17             MR. IZEN:  I'm still under restrictions from my

18   doctor --

19             THE COURT:  So, how is your knee?

20             MR. IZEN:  I got a pretty good report yesterday.

21   I'm going to be released for work in three weeks.

22             THE COURT:  You get a knee replacement?

23             MR. IZEN:  No, thank God.  I had an arthroscopy,

24   which reshaped the entire knee surface.

25             THE COURT:  I feel for you.

1    MR. IZEN:  They called me up, but it had looked

2  like I was pretty when they were almost as dirty inside.

3        THE COURT:  All right.  All right.  Well, I've --

4        MR. IZEN:  I'd request 21 days if I could have it.

5        THE COURT:  From today's date?

6        MR. IZEN:  Yes, sir.

7        THE COURT:  Okay.  That's fair enough.  21 days

8  from today's date.  Mr. Raum.

9        MR. RAUM:  Perhaps 10 days beyond that.

10       THE COURT:  10 days.  And we'll take a look at

11 this.  Okay.  And I assume if I -- well, procedurally, let

12 me think ahead, 'cause I don't want to -- I guess we're

13 going to have to convene here again, because if I find that

14 the first category has to be produced, I guess Mr. Mayer is

15 just going to have to get in front of me and say, Judge, I'm

16 not doing it, I'm not going to do it, and then I'll have to

17 hold him in contempt so that you can take an appeal to the

18 Eleventh Circuit.

19       MR. IZEN:  Yes, sir.

20       THE COURT:  I'll say this right now, I'm -- you

21 know, I'm not inclined to put him in jail.  I mean -- you

22 know, I don't think you'd want me to do that either.  I

23 would, of course, stay my contempt order, that's assuming I

24 rule against him.

25       MR. IZEN:  Yes, sir.

1　　　　　THE COURT:  Okay.  All right.  Now, those are

2　copies, right, that you have there?

3　　　　　MR. IZEN:  Yes, sir.

4　　　　　THE COURT:  Okay.  You have the originals?

5　　　　　MR. IZEN:  I think the originals are the returns

6　that were sent to IRS, but he's --

7　　　　　THE COURT:  No, I mean -- you better not say

8　anything, Mr. Mayer.  You better watch out.  I'd let

9　Mr. Izen speak.  Those are copies of documents that he has

10　in his possession?

11　　　　　MR. IZEN:  Yes, sir.

12　　　　　THE COURT:  Okay.

13　　　　　MR. IZEN:  Responsive to everything the Government

14　would have requested, where he could have been at risk for

15　not obeying your order to produce it in 10 days, which was

16　then changed when you granted the <u>Argomaniz</u> hearing.  It

17　sort of pushed him over to this day.

18　　　　　THE COURT:  That's all right.  All right.  Well --

19　Yes, sir.  You want to add something?

20　　　　　MR. STEWART:  Yes, sir.  This is Joe Stewart,

21　local counsel.  I didn't know if Your Honor wanted us to

22　separate out the documents to assist Your Honor in the

23　review.

24　　　　　THE COURT:  No, like I said -- I mean, it's really

25　an issue of law.  Does that first category fall within the

23

1   Required Records Exception, you know.  Although, I think
2   that -- you know, maybe that might not be a bad idea.  How
3   long will it take you to do that?
4            MR. IZEN:  We could -- I'm staying till tomorrow
5   so we could separate them out today and give you any reports
6   you want, or deliver them back here separated out.
7            THE COURT:  Would you do that?  Would you separate
8   them out into the two different categories?
9            MR. IZEN:  Yes, sir.
10           THE COURT:  And just deliver them to my -- deliver
11  them directly to my Chambers.
12           MR. IZEN:  Yes, sir.  I'll have to read that
13  statute, and I'm interpreting the statute to require someone
14  to make a list -- to make up a record.  You know, in these
15  drugs cases where they mis-prescribe the pharmacies and they
16  do stuff, they're supposed to have triplicate forms and the
17  State prescribes the form, all that kind of stuff, the
18  statute is sort of vague.  It just says provide a list or
19  disclose the return to these people you prepared returns
20  for.  So, one way if you show the returns that discloses the
21  people you prepared the returns for, but that probably goes
22  farther than the statute.  I need a little guidance because
23  if you produce a record strictly in conformity with that
24  statute, I think what I'm hearing from the Court is the
25  Court is not requiring me to do anything more than produce

1    that for the Court's review of what's required specifically

2    by that statute.  I'm not sure that anything we have in this

3    box is in that form, just the diminutus that is required by

4    the statute.

5         THE COURT:  Let me look at 6107(b) again.

6         MR. IZEN:  If you looked at all these boxes, you

7    would get the information that 61, whatever it is, requires.

8         (Brief pause.)

9         THE COURT:  Well, the statute requires that you

10   retain a completed copy of any tax return or claim.

11        MR. IZEN:  Right.

12        THE COURT:  Well -- or retain on a list the name

13   and taxpayer identification number of the taxpayer, and make

14   such copy.  So, I guess you could do it in the alternative,

15   can't you?

16        MR. IZEN:  Yes.  We'll separate out whatever the

17   Court wants us to, but we could also just create a list and

18   deliver it to you.

19        THE COURT:  No, maybe you better give me the

20   records, just to be safe.  Okay.

21        MR. IZEN:  Okay.

22        THE COURT:  All right.  Anything else?

23        MR. RAUM:  May I ask how Your Honor envisions the

24   case proceeding, during the pendency of this reviewable

25   discovery, going forward or --

1          THE COURT:  Well, what discovery -- you going to

2  want to take a deposition?

3          MR. RAUM:  Deposition, and also, of course,

4  proceed against Morton and Oxley and Legal Tax Newsletter --

5          THE COURT:  Go ahead.  Go with Morton and Oxley,

6  you know, I mean --

7          MR. RAUM:  Are we going to -- I don't know if

8  we'll have Fifth Amendment arguments as to those entities or

9  not, from the other side.

10          THE COURT:  I don't know.  I don't know that -- do

11  you know, Mr. Izen?

12          MR. IZEN:  Your Honor, the -- it's possible to

13  have a very small corporation, family partnership under

14  Bellis versus the United States, and have the Fifth

15  Amendment apply to it, but I do not anticipate Moxley and

16  this other bunch that is going to have records is really all

17  that helpful to the Government on it.  I'm not the judge of

18  that.

19          THE COURT:  Okay.  I understand.

20          MR. IZEN:  But let me say, also, it is very

21  important for us to determine whether the Court believes and

22  rules that we have a viable Fifth Amendment claim, and to

23  determine whether these required records have to be turned

24  over, because the invocation of the Fifth Amendment is not

25  the satisfaction of the burden of proof.  When you sue, you

1    get in trouble when you invoke the Fifth Amendment.  When

2    somebody sues you in a civil case, you lose certain things

3    by invoking the Fifth Amendment.  So, we need to determine

4    as to Mr. Mayer, individually, whether it's worth asserting

5    the Fifth Amendment to have some huge abuse of shelter

6    penalty judgment, potentially, against him where he doesn't

7    participate fully in the proceedings.  For that reason, we

8    need to have a determination before we decide from the --

9    you, or the Eleventh Circuit --

10             THE COURT:  You asking me to just put this case on

11   hold while we litigate this issue?

12             MR. IZEN:  As to him individually, because --

13             THE COURT:  And I think that's a fair statement,

14   because obviously, if you set him for a deposition,

15   Mr. Raum, I know what's going to happen -- you know, and

16   he's probably, not probably, he will invoke his rights under

17   the Fifth Amendment.  We're going to have to come back here

18   again, you know, so why don't we just put -- and I'll let

19   you gentlemen know this, I don't sit on matters.  All right.

20   Once a matter is ripe, you know, I'll get you an order out

21   within a week or two.  All right.  I don't sit on it, and

22   this is too important.

23             So, I'm inclined to agree that we just -- with

24   regard to Mr. Mayer, let's just leave it the status quo till

25   I resolve this issue, and then, of course, with regard to

1    the other entities move forward on them and we'll see where

2    we are.  Okay.

3           MR. IZEN:  That's what I would request.

4           THE COURT:  All right.  I'll do that.

5           MR. IZEN:  I cannot competently advise my client

6    on the risk of asserting the Fifth Amendment till I find out

7    the validity.

8           THE COURT:  I understand.  So, no more discovery

9    except with regard to the issue I'm focusing on now.

10          MR. IZEN:  Yes, sir.

11          THE COURT:  All right.  Anything else?  Yes, sir,

12    Mr. Stewart.

13          MR. STEWART:  Yes, sir.  Judge, because of the

14    gravity of the Motion for Disqualification, I thought it was

15    important that I appear before Your Honor today.  Does Your

16    Honor require that local counsel appear for all future

17    hearings.

18          THE COURT:  No, no.

19          MR. STEWART:  Okay, because it's at the expense of

20    the client if it's not necessary.

21          THE COURT:  I understand, except if there's a

22    hearing scheduled -- you know, under the local rules and

23    Mr. Izen can't make it, you have to step in

24          MR. IZEN:  Yes, sir.  I understand that.

25          THE COURT:  No, I don't, and in fact, I tried a

28

1  case one time, out of state counsel had local counsel, local

2  counsel came in and said, Judge, it's going to be a five-day

3  non-jury, do we have to stay?  No, go about your business.

4  I recognize the expense of the client.

5         MR. STEWART:  Thank you, Judge.  I appreciate it.

6         THE COURT:  Mr. Raum, anything else?

7         MR. RAUM:  Well, I just want to make sure I

8  understand your Judge's ruling of the _Argomaniz_ issues.

9  Obviously, I stipulated that the act of production is

10  properly invoked here.  Does the Court intend to review

11  those documents in camera and make rulings about each of

12  them or not.  I just want to make sure I understand what's

13  going on.  I stipulated that responsive documents are

14  properly -- the Act of Production Doctrine is properly

15  implicated as to them.

16         THE COURT Okay.

17         MR. RAUM:  But the Eleventh Circuit, or the

18  _Argomaniz_ case required that the documents be looked at and

19  a judgment made by the Court.  And I'm just wanting some --

20  so I'm clear about what's going to happen with these

21  documents.  Will they be submitted to the Court for review

22  or --

23         MR. IZEN:  Your Honor, we'll be happy to submit

24  them back to you separated, and let you look at them.

25         THE COURT:  Oh, Yeah.  I'm going to look.  Are you

29

1    saying that they may not contain incriminating information?

2         MR. RAUM: I don't know what's in the boxes,

3    obviously.

4         THE COURT: Well --

5         MR. IZEN: I don't think --

6         THE COURT: Well, I guess that's fair enough. I

7    guess I'm probably going to have to look at them.

8         MR. IZEN: Okay. Can I make one other point?

9         THE COURT: Sure.

10        MR. IZEN: If the Government is claiming that the

11   only protection of the Fifth Amendment is the act of

12   production, I want to make it clear, we want to appeal the

13   contents of the records being privileged, not just the act

14   of production. We intend to take it all the way.

15        MR. RAUM: See, my position is the contents are

16   not privileged, only the act of producing a document is

17   sometimes privileged. Contents themselves are not

18   privileged, but they're sort of protected -- but the --

19   turning over the document is protected by the Act of

20   Production Doctrine. If those documents are responsive and

21   if Mr. Izen wants to try to make law on the Fifth Amendment

22   protecting the contents of documents, then he's accurately

23   stated it's going to have to go before appellate review at

24   some point.

25        MR. IZEN: I agree with Mr. Raum's statement

1    except to the extent that I'm trying to reestablish the law

2    of the Fifth Amendment as it used to be, and the way it was

3    when this country was adopted from England.  It said that

4    man was privileged in home and in his papers, and so that's

5    what they touched on in _Hubble_ in the concurring opinion in

6    the Supreme Court.  That's the Judges I talked about in the

7    _United States versus Hubble_.

8              (Brief pause.)

9          I am familiar with at least one Eighth Circuit

10   case, and I'll put it in my brief.  It says the contents are

11   also privileged.  It came out in 1992 after this _United_

12   _States versus Doe_, and the Supreme Court refused to hear it.

13             THE COURT:  You know, I thought I had _Argomaniz_ up

14   here.  I didn't bring it with me.  Cindy, will you go get me

15   925 Fed. 2d.

16             MR. IZEN:  I believe Mr. Raum and the Government

17   are within their rights, Your Honor, to require a judicial

18   review of the documents as to their contents, so they don't

19   have to rely on us to say that the content is incriminating.

20   I think he's got the right to that under _Argomaniz_, under

21   _Trosure_, and under other cases that are in all the Circuits.

22   I think that's what he's trying to argue.

23             THE COURT:  I'm sorry.

24             MR. IZEN:  I think they have a right to judicial

25   review without an assumption that any contents of these

1  records, the production of them would be incriminating, or

2  the contents of them themselves in light of what you know

3  about this case with the tax preparer, and the fact that the

4  Government is unhappy with the returns, and they say that

5  the tax law is being violated, which bears criminal

6  penalties as well as civil.

7          So, I mean, if you had a birthday card in there

8  that he had put in inadvertently, that would be something --

9  part of his records that obviously wasn't incriminating.

10  So, some review of the contents needs to be made, I guess,

11  by a judicial officer, which is yourself, and we'll separate

12  them out to say this would fit within the required records

13  exception as far as we know, and we'll give the other part

14  to you for review as to content.

15          If we're wrong as to anything on the Required

16  Record Exception, that's subject to your independent review,

17  too, but we'll try to get the ball rolling by doing our

18  first effort to separate it out for you to try to save time.

19  Kind of like in your criminal cases, you know, where the

20  Government's supposed to give that Brady stuff or evidence

21  which shows innocence rather than guilt and you have the

22  Government attorney deciding whether it shows innocence, you

23  know.  It's better to have a judicial officer review it.

24          (Brief pause.)

25          THE COURT:  Well, you know, in Argomaniz, they're

1    talking about the Government correctly states that the

2    contents of voluntarily prepared business records are not

3    protected by the Fifth Amendment privilege against

4    self-incrimination.

5         MR. IZEN:  Yes, sir.  That was before the _Hubble_

6    concurring opinion.

7         THE COURT:  All right.  I understand that.

8    However, _Argomaniz_ is not invoking the privilege as to the

9    contents, and I italicize contents, of documents described

10   in the IRS summons, but as to the act of producing the

11   documents.

12        MR. IZEN:  We are and we recognize you could

13   overrule us by still the Eleventh Circuit, but we're going

14   to request they revisit when we go up, and we are going to

15   go to the Supreme Court of the United States.

16        THE COURT:  Okay.  But all right, so you know the

17   problem, Mr. Izen.  Mr. Izen, the problem is the Eleventh

18   Circuit and the Supreme Court has just said or previously

19   said that the contents of voluntarily prepared business

20   records are not protected by the Fifth Amendment privilege.

21        MR. IZEN:  Yes, sir.

22        THE COURT:  I mean, I can't touch that.  You know

23   that.

24        MR. IZEN:  I understand, but I'm saying --

25        THE COURT:  So really --

1    MR. IZEN:  If we don't invoke it, we don't get to

2   consider it when we get up --

3        THE COURT:  I understand, and when we come back

4   again, I mean, you can say, depending on how I rule, you can

5   say, Judge, the contents also incriminate me.  Whereupon,

6   I'm going to say, well, you know, go re-argue it to the

7   Eleventh Circuit and the Supreme Court.

8        MR. IZEN:  Well, we'll short-circuit that.  We

9   will argue it all at the same time.  We can make -- we don't

10  want to delay them that much.

11       THE COURT:  But -- but -- so the record is clear

12  again, the Government concedes that as to the act of

13  producing the documents, Mr. Mayer would have a legitimate

14  right to invoke his Fifth Amendment privilege.

15       MR. RAUM:  I concede that he has a right to invoke

16  it and get the Court's review under <u>Argomaniz</u>, yes.  I'm not

17  going to concede that everything in those boxes is protected

18  when no one other than Mr. Mayer has put things in there.

19       THE COURT:  I'm going to look at them.  Everybody

20  get out.  I'm going to have an in camera hearing.

21       MR. RAUM:  Okay.  Thank you, Your Honor.

22       THE COURT:  Who else is in the Courtroom?

23       MR. IZEN:  We have some people that are not

24  attached with the case.  All potential witnesses will have

25  to be removed.  The only ones who are proper are myself, the

34

```
 1   taxpayers' counsel, Mr. Stewart, and Mr. Mayer, but that's

 2   subject to your ruling.

 3            THE COURT:  Right.  Everybody else has to leave.

 4            (Thereupon, an in camera hearing was held and not

 5   included with this transcript.)

 6            THE COURT:  We're going back on the open record.

 7            MR. IZEN:  Your Honor, with your permission,

 8   Mr. Mayer says he inadvertently brought some things he

 9   wanted to give me, they were in there and had to do with the

10   case or whatever.  They're in those boxes.  Obviously, I

11   didn't know those were in there.  I don't want any

12   attorney-client privilege stuff in there.  I don't mind the

13   Court seeing --

14            THE COURT:  So what are you telling me, there are

15   some things in the boxes he was going to give to you?

16            MR. IZEN:  I believe he just indicated to me there

17   was.  I would request he be able to show them to the Court

18   and retrieve them so it's clear they're not part of any

19   records.

20            THE COURT:  All right.  Come on up, Mr. Mayer.

21   Okay.  So the record is clear, what you have retrieved is

22   not in connection with some of these records?

23            THE WITNESS:  Yes, Your Honor.

24            THE COURT:  All right.  I understand.  All right.

25   Mr. Raum?
```

*CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER*

1          MR. RAUM:  Yes, Your Honor.

2          THE COURT:  Why is it -- I want you to state this

3    for the record.  What is it that the Government claims

4    Mr. Mayer has done in this case?

5          MR. RAUM:  The complaint alleges that he's done

6    several things wrong.  One is promote a system of abusive

7    tax shelter centered around the use of sham trusts.  Some of

8    those trusts are domestic, some are overseas.  Second, he's

9    prepared tax returns which are frivolous and abusive.  Based

10   on those trusts and also based on another theory called the

11   Section 861 Argument, which argues that domestic income is

12   not taxable.  He's preparing abusive returns and promoting

13   tax shelters.

14         THE COURT:  All right.  So he's preparing false

15   tax returns?

16         MR. RAUM:  That's correct, Your Honor.

17         THE COURT:  All right.  Which is a -- which is a

18   crime, is it not?

19         MR. RAUM:  It is.

20         THE COURT:  Okay.  However, the Government has

21   decided to go against him civilly rather than criminally.

22         MR. RAUM:  This is a civil proceeding, obviously.

23         THE COURT.  I understand, but, you know, you've --

24   you have certain options, you know.

25         MR. RAUM:  He may have to face criminal

1    consequences at some point.

2    THE COURT:  Okay.  But if what the Government has

3    in its possession right now, the knowledge the Government

4    has about Mr. Mayer, would you feel confident -- have you

5    ever been -- have you ever pleaded before a Grand Jury,

6    presented a case?

7    MR. RAUM:  No, I have not, Your Honor.

8    THE COURT:  Would you feel confident that you'd be

9    able to convince a Grand Jury that there's probable cause to

10   believe he's violated tax laws based on the information that

11   you have?

12   MR. RAUM:  I'm reluctant to speculate about that.

13   I've conceded that he has a legitimate fear of prosecution,

14   and I'm not contesting --

15   THE COURT:  And if your allegations are true in

16   your complaint, and they are proved beyond a reasonable

17   doubt to a jury, he could be convicted of a criminal

18   offense, correct?

19   MR. RAUM:  That's probably true.

20   THE COURT:  Okay.  That's all I want to know.

21   Okay.  Well, there's no question in my mind, based on -- you

22   know, the representation you just made to me, and I want it

23   to be clear on the record, additionally -- I mean, well, I

24   wanted that to be clear on the record, and based on my in

25   camera questioning of him, and so you'll know, Mr. Izen led

CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER

1  off with some preliminary questions, and I took over.  Based

2  on his explanations to me as to what's in those boxes, he

3  has a -- he has an absolute right to invoke his Fifth

4  Amendment privilege with regard to the act of production

5  because if he produces those documents, the Government could

6  later use them against him in a prosecution for tax fraud,

7  or at the very least -- or it could also be a link in the

8  chain of evidence against him.  Assuming the Government

9  doesn't know the identity of some of these people that he's

10 prepared tax returns for, by producing those documents, he

11 would be giving the Government a list of the people that

12 he's prepared returns for.  A good agent would go interview

13 them, they would probably pull the tax returns, examine

14 them, they could come to the conclusion, well, here's

15 another fraudulent tax return, we're going to prosecute him

16 for this -- you know.

17         So, there's no question in my mind he has a

18 absolute legitimate right to invoke the Fifth Amendment.

19 The question becomes, and Mr. Raum, I'm going to tell you

20 right now, everything that is in that -- those boxes falls

21 within the first category.  He has nothing within the second

22 category.  You understand what I'm telling you?

23         MR. RAUM:  First category, meaning the 6107 --

24         THE COURT:  Yes, it is the only documents he has.

25 And Mr. Mayer, you're still under oath.  I'm sure you've met

1  with Mr. Izen and he's counseled you with regard to the

2  scope of my order, correct?

3        THE WITNESS:  Yes, Your Honor.

4        THE COURT:  Okay.  And what you're telling me here

5  today is that everything in those two white banker boxes are

6  all the records that you have with regard -- that's complied

7  with my order?

8        THE WITNESS:  Yes, Your Honor.

9        THE COURT:  Okay.  I'm sorry about that.  So,

10  really, gentlemen, what we're talking about is whether the

11  Required Records Exception applies here.  If it does, those

12  documents go to the Government.  If it doesn't, they go back

13  to him.  Anybody want to add anything else before we close?

14  Okay.  All right.  Well, you just leave the boxes with me,

15  Mr. Izen.

16        MR. IZEN:  Yes, sir.

17        THE COURT:  Okay.  21 days.  How much time you

18  want, 10?

19        MR. RAUM:  10 would be fine, Your Honor.

20        THE COURT:  I'll get you an order and if I

21  determine that he has to produce them, we'll come back here,

22  I'll direct him to produce them.  If he fails to do so, I'll

23  hold him in contempt.  I'll do a contempt order.  I'll stay

24  it, we'll go from there.

25        Thank you.

39

1              MR. IZEN:  Thank you, sir.

2              MR. RAUM:  Thank you, Your Honor.

3              THE COURT:  So, you know, this is Ms. Bedell.

4    She'll be working with me on this case.

5              (Brief Pause.)

6              THE WITNESS:  There's no name on the boxes, except

7    the one that you wrote.  Do I need to put my name on the

8    box?

9              THE COURT:  No, I know what they are.

10             (Thereupon, the proceedings were concluded.)

11                           * * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

```
 1                              CERTIFICATE

 2

 3    STATE OF FLORIDA           )
                                     SS
 4    COUNTY OF HILLSBOROUGH     )

 5

 6              I, CLAUDIA SPANGLER-FRY, Official Court Reporter

 7    for the United States District Court, Middle District,

 8    Tampa, Division,

 9              DO HEREBY CERTIFY, that I was authorized to and

10    did, through use of Computer Aided Transcription, report in

11    shorthand the proceedings and evidence in the above-styled

12    cause, as stated in the caption hereto, and that the

13    foregoing pages numbered 1 to 40, inclusive, constitute a

14    true and correct transcription of my shorthand report of

15    said proceedings and evidence.

16              IN WITNESS WHEREOF, I have hereunto set my hand

17    in the City of Tampa, County of Hillsborough, State of

18    Florida, this 22nd day of May, 2003.

19

20          CLAUDIA SPANGLER-FRY, Official Court Reporter

21

22

23                 By_____

24

25
```

CLAUDIA SPANGLER-FRY, OFFICIAL U. S. COURT REPORTER