PAUL J. SULLA #5398
P. O. Box 425
Laupahoehoe, HI  96764
(808) 962-0025

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas  77401
(713) 668-8815
(713) 668-9402 FAX

Attorneys for Defendant
Stephen B. Wilson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, § § Plaintiff, § § VS. § § STEPHEN B. WILSON, § § Defendant. § | CR. NO. CR05-00342 HG INDICTMENT [26 U.S.C. § 7201] |

**RESPONSE BY JOE ALFRED IZEN, JR. TO COURT'S ORDER TO SHOW CAUSE DATED AUGUST 8, 2006 WITH SUPPORTING MEMORANDUM OF LAW**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

Counsel, Joe Alfred Izen, Jr. ("IZEN") responds to this Court's Show Cause Order dated August 8, 2006 as follows:

**FACTUAL ANALYSIS AND BACKGROUND SUPPORTING DISCHARGE OF ORDER TO SHOW CAUSE DATED AUGUST 8, 2006**

I.

1. The facts supporting Izen's response to this Court's Show Cause Order signed August 8, 2006 which, in turn, was based on allegations of "concern" expressed in the "non-objection" objection filed by Government counsel, Mr. Les Osborne, are set out in the Affidavit of Joe Alfred Izen, Jr. with its attached exhibits filed contemporaneously with this Response.

2. Izen has had a long history of battles with the Internal

Revenue Service and its "attorney," the United States Department of Justice Department, Tax Division. Although government counsel, such as Mr. Raum, Mr. O'Reilly, and those Department of Justice higher ups advising them to file misleading and erroneous Motions to Disqualify were forced to swear to uphold the Constitution before they could "qualify" for their government jobs and salaries, little respect has been shown by that office (or that of IRS counsel) over the years for the taxpayers/citizens' rights to freedom of speech (in the tax shelter / tax avoidance area) or to remain silent during government criminal investigations. More recently, Government prosecutors and other counsel's schemes to manipulate a Defendant's access to counsel of choice have been documented and condemned. (KPMG) <u>United States v. Stein</u>, 5105 Crim. 0888 (S.D.N.Y., 2006). Mr. Osborne's reference to an indictment as a basis for disqualification in this case **which was dismissed by the Government in 1995, displays an ignorance of, or contempt for, the presumption of innocence mandated by the Constitution.**

3.  By purporting to rely on cases in which Izen was involved going all the way back to 1982 to support the "concerns" parroted by Mr. Osborne in his "non-objection" objection, the government invites an examination of its past actions before the U.S. Courts.

4.  The United States Department of Justice and its client, the IRS, have been at odds with Izen for twenty-six years. Izen thwarted IRS efforts to chill First Amendment protections of commercial speech by obtaining an acquittal of so-called promoters who had been charged and convicted for advising U.S. taxpay-

2

ers on the legal use of foreign trusts to avoid U.S. taxes. Affidavit of Joe Alfred Izen, Jr., Exhibit A. Izen reversed the Tax Court's decision refusing to grant relief from fraudulent IRS trial and settlement practices which involved the bribing of parties and witnesses to obtain favorable testimony. Affidavit of Joe Alfred Izen, Jr., Exhibit B. Izen successfully exposed and reversed the unconstitutional "tax crime exception" to the Fifth Amendment which IRS had illegally and unconstitutionally obtained in the Ninth Circuit. Affidavit of Joe Alfred Izen, Jr., Exhibit E. Izen defeated IRS efforts to disbar him before the Internal Revenue Service on the purported basis that he had failed to file his returns during tax years 1995, 1996, and 1997, and, thereafter successfully defended himself against an IRS money laundering sting which the IRS directed against him purportedly based on his failure to file. Affidavit of Joe Alfred Izen, Jr., Exhibit F. Finally, Izen obtained a reversal of the <u>Dixon</u> Tax Court decision in the Ninth Circuit and forced the government to give his clients the same benefits that it paid the informant witness and party who falsely testified in its favor in the second <u>Dixon</u> decision. Affidavit of Joe Alfred Izen, Jr., Exhibit G.

5. After its unsuccessful efforts to disbar Izen before the Internal Revenue Service and, thereafter, to frame him in a money laundering investigation brought by agents who had posed as Izen's clients, the government brought unsuccessful Motions to Disqualify Izen in the <u>Dixon</u> Tax Court case and the <u>Henkell and Estate Preservation</u> abusive shelter penalty case, and wrote Izen a letter threatening to attack his right to practice based on his

3

1   "unfitness." Affidavit of Joe Alfred Izen, Jr., Exhibits C, D,
2   and I.
3       6.  Shortly after the second <u>Dixon</u> decision on January 17,
4   2003, excoriating their misconduct, government counsel in the
5   <u>Mayer</u> case served Izen with a motion claiming Izen was unfit "to
6   represent Mayer or any other Defendant."
7       7.  Mr. Raum's (and the government higher ups advising him)
8   claim, in the Tampa Motion to Disqualify that the government
9   "...was unaware of the status of this proceeding..." was false.
10  Government motion, Tampa Proceedings, P. 4, fn. 2.  The govern-
11  ment was a party before the Seventh Circuit and never objected
12  that it was not served with all Seventh Circuit rulings in that
13  case.  Close examination of the Seventh Circuit's orders in the
14  <u>Johnson</u> case belies any government claim that government counsel
15  were not aware before filing the Tampa Motion to Disqualify that
16  **<u>Izen was discharged</u>** from the show cause order directed against
17  him by Circuit Judge Posner **<u>without imposition of any sanctions</u>**
18  **<u>for Izen's appellate conduct.</u>**  Affidavit of Joe Alfred Izen, Jr.,
19  Exhibit H.  Now Mr. Osborne has repeated the same allegations
20  abandoned by Mr. Raum.
21      8.  The government's motion which it filed in the <u>Mayer</u> case
22  contained numerous "errors."  The government claimed:

> The Eleventh Circuit recently sustained a $9,394.00
> sanction issued by the Tax Court against Izen for
> repeatedly disobeying discovery and scheduling order.

25  Government motion, P. 3.  **<u>Izen was never sanctioned by the Ele-</u>**
26  **<u>venth Circuit.</u>**  In fact, Izen remains a licensed member of the
27  Eleventh Circuit, and has been licensed in the Eleventh Circuit
28  since its split from the Fifth Circuit over twenty years ago, and

4

1  recently filed an appellate brief for a taxpayer, without inci-
2  dent in the case styled <u>Domer L. Ishler v. Commissioner of Inter-</u>
3  <u>nal Revenue</u>.  (There, as here, the United States, Department of
4  Justice Tax Division represented the Commissioner. No objection
5  or ethical charges were made against Izen's appearance.)
6         9.  The government has attempted to mislead various Courts
7  into believing that Izen and his client, Mrs. Johnson, the tax-
8  payer gravely ill with diabetes, at the time of the Tax Court
9  case, failed to provide any discovery in the Tax Court case.  In
10 fact, Izen was sanctioned for failing to provide further answers
11 to an Interrogatory No. 13.  The Tax Court **never** ruled that the
12 taxpayer Johnson's invocation of the Fifth Amendment was frivo-
13 lous.  Tax Court Judge Cohen who levied the $9,394 sanction
14 claimed that the sanction did not include punishment of any
15 efforts by Johnson to invoke the Fifth Amendment.
16        10.  In light of the government's several unsuccessful
17 Motions to Disqualify Izen whenever it loses an appeal or has
18 litigation anxiety and its other efforts to harass, intimidate,
19 and threaten, Izen by attacking his right to practice, the "non-
20 objection concerns" submitted by Mr. Osborne come as no surprise.
21 Mr. Osborne's failure to accurately inform this Court of the
22 history of the Government's unsuccessful efforts to limit Izen's
23 practice and to interfere with Izen's representation of his
24 clients may be intentional or just due to ignorance.  It is
25 possible that Mr. Osborne's superiors in the Justice Department,
26 or local "associates" in the IRS, fed him only the information
27 they wanted him to have hoping that this Court would ignore, or
28 better yet, never learn of, their past misdeeds.

11. Mr. Osborne's initial position -- that he felt constrained not to object to Izen's appearance because he had agreed not to object and then failing to keep to his word, exceeds the Government's past misconduct in the Lashlee case. There the Government threatened to file a motion or objection to interfere with Izen's pro hac vice practice, but did not do so once the plea agreement it wanted was disposed of to its satisfaction. Here, the Government simply misrepresented its true intentions, obtained entry of the plea bargain, and then moved to disqualify Izen surreptitiously by submitting its "non-objection" after the fact. Defendant Wilson, who relied on Izen's assistance in entering a plea agreement, will now, presumably, be deprived of Izen's assistance at the sentencing by this Government ploy -- a new and even more sinister manipulation of counsel than the tactics displayed in Lashlee. See Izen Affidavit, Exhibit I.

12. Mr. Osborne, if he knew the full facts, was aware that the Government's allegations of misconduct had already been fully aired in the Tampa District Court and were barred by res judicata and collateral estoppel. If he did not know the full facts, he should have made proper investigation before leveling the charges. Nor should Government attorneys be allowed to escape their responsibility placed on the signers of pleadings by the Federal Rules, to make proper investigation and to obtain personal knowledge of the truthfulness and legal viability of charges before making them, through the simple expediency of filing a "non-objection" with the Court and inducing the Court to make common cause with them by issuance of a Show Cause Order.

**MEMORANDUM OF LAW IN SUPPORT OF DISCHARGE OF ORDER TO SHOW CAUSE**

II.

1. **THE GOVERNMENT'S LETTER OF "CONCERN" FAILS TO COMPLY WITH LEGAL AND FACTUAL STANDARDS OF PROOF REQUIRED BY THIS AND OTHER CIRCUITS.**

Mr. Osborne's submission puts forth various factual allegations of Izen's misconduct. The allegations are unsworn hearsay. Apparently relying on what it feels is its "close relationship" with the District Court and the credibility of its office, the Government duped the Court into issuing the August 8, 2006 Show Cause Order without putting forth complete facts and circumstances surrounding its claims. Mr. Osborne does not claim he obtained personal knowledge before making the allegations. Yet, the Court apparently accepted the allegations as true without any proof and issued a negatively worded Show Cause Order wrongly shifting the burden of proof concerning such allegations on to Izen.

Surely the Government knew that its motion was not competent evidence. Certainly the Government must have been aware that the factual recitations in the cases it cited were not admissible as proof in this proceeding. Wyatt v. Terhune, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003) (Factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice.)

The Ninth Circuit standard of review for disqualification of pro hac vice status requires proof of serious misconduct by counsel which has prevented the orderly administration of justice in the case under consideration. Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005). Motions Pro Hac Vice are not

7

intended as an avenue for Government counsel to air their past grudges or grievances from other cases which were non-meritorious and which were unsuccessfully litigated. Kohl v. United States District Court, District of Idaho, 366 F.3d 813 (9th Cir. 2004).

Under Schlumberger Technologies, Inc. v. Wiley, 113 F.3d 1553 (11th Cir. 1997), a party seeking to bar an opposing counsel from practicing must submit a motion and submit proof which establishes a:

> ...Showing of unethical conduct rising to a level that would justify disbarment...."

Schlumberger at P. 1561. In making allegations of ethical misconduct, the Government bears the burden of proof. Keepsake, Inc. v. P. S. I. Industries, Inc., 33 F.Supp. 2d 1033, 1037 (M.D. Fla. 1999). The burden of proof to establish grounds for disqualification is on the party moving for disqualification. Metrohealth Ins. Co. v. Anclote Psychiatric Hosp., 961 F.Supp. 1580 (M.D. Fla. 1997), Contant v. Kawasaki Motor Corp. USA, Inc., 826 F.Supp. 427 (M.D. Fla. 1993); National Union v. L. E. Myers Co. Group, 937 F.Supp. 276 (S.D.N.Y. 1996); Matthews v. Lebouef, Lamb, Greene, & MacRae, 902 F.Supp. 26, 28 (S.D.N.Y. 1995). A. V. by Versace, Inc. v. Gianni Versace, S.P.A., 160 F.Supp.2d 657 (S.D.N.Y. 2001). The Second Circuit recognizes the "restrained" approach to disqualification which prevents the substitution of the District Court for the state or federal disciplinary machinery in resolving ethical complaints. Matthews, supra at P. 28. The Second Circuit's restrained approach is designed to prevent "wholesale filings of motions for tactical reasons." Bottaro v. Hatton Assocs., 680 F.2d 895, 896-97 (2d Cir. 1982).

8

  Disqualification of counsel should be used sparingly where it would work substantial hardship on the client. <u>Metrohealth Ins. Co.</u> at P. 1583. <u>Norton v. Tallahassee Memorial Hospital</u>, 689 F.2d 938, 941 (11th Cir. 1982) at n. 4.

  The disqualification of one's chosen counsel is an extraordinary measure that should be resorted to sparingly. <u>Metrohealth</u> at P. 1582. An order for disqualification is a drastic means which Courts should hesitate to impose except when absolutely necessary. <u>Freeman v. Chicago Musical Instrument Co.</u>, 689 F.2d 715, 721-22 (7th Cir. 1982).

  In determining a Motion to Disqualify, the Court must take into account not only the various ethical precepts adopted by the profession, but also the societal interests at stake. The rule of disqualification should not be mechanically applied. <u>Church of Scientology of California v McLean</u>, 615 F.2d 691, 693 (5th Cir. 1980); <u>F.D.I.C. v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304 (5th Cir. 1995).

  Mr. Osborne's "non-objection" merely cited the Tax Court <u>Johnson</u> case without accurately stating the final results of the appeal leaving the impression Izen had been sanctioned by the Seventh Circuit. The Government does not explain, as part of its "concerns," why no disciplinary complaints were ever pursued with respect to any of the ancient (or more recent) cases it describes as misconduct, fails to address or even mention the expiration of the statute of limitations for disciplinary purposes on all of the claims arising out of the cases, and, last of all, never addresses how an attorney can defend himself against ethical charges brought, in some cases, more than twenty years after the

9

alleged misconduct or on charges arising out of comments made in case decisions which do not specifically address the attorney.

## 2. THE GOVERNMENT'S "NON-OBJECTION" IS A THINLY-VEILED EFFORT TO INTERFERE WITH THE DEFENDANT'S RIGHT TO COUNSEL OF CHOICE.

All Circuits recognize a Defendant's right to counsel of choice in a criminal case under the Sixth Amendment. Disqualification of one's chosen counsel is an extraordinary remedy that should be resorted to sparingly.

Potashnik v. Port City Const. Co., 609 F.2d 1101 (5th Cir. 1980). The right also arises out of Fifth Amendment concepts of due process. Potashnik at P. 1117. Various Courts have taken Potashnik's principles into account in resolving disqualification motions. Contant at P. 428. "Disqualification of one's chosen counsel is an extraordinary remedy that should be resorted to sparingly."

The power of Courts to disqualify an attorney from a case is incidental to all Courts and is necessary for the preservation of decorum and the respectability of the profession. Ex Parte: Burr, 22 U.S. (9 Wheat) 529, 531, 6 L.Ed. 152 (1824) (Marshall, C. J.). However, the ability to deny one's opponent the services of his chosen counsel is a potent weapon. Confronted with such a motion, Courts must be sensitive to the competing public interest of requiring professional conduct of an attorney and by permitting a party to retain counsel of his choice. In order to resolve competing interests, the Court must balance the interests of the public in safeguarding the judicial process with the interests of each party. Motions for Attorney Disqualification should be viewed with extreme caution for they can be misused as

a technique of harassment. <u>Manning v. Waring, Cox, James, Sklar, and Allen</u>, 849 F.2d 222, 224 (6th Cir. 1988). <u>General Mill Supply Co. v. SCA Services, Inc.</u>, 697 F.2d 704, 711 (6th Cir. 1982). <u>Panduit Corp. v. Allstates Plastic Mfg. Co.</u>, 744 F.2d 1564, 1577 (Fed. Cir. 1984).

The Fifth Circuit cautions against an inflexible approach on Motions to Disqualify and requires a "meticulous deference to litigants' rights." <u>F.D.I.C. v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304, 1314 (5th Cir. 1995). In the Fifth Circuit the Local Rules of the District Court are relevant in resolving disqualification, but parties can not be deprived of right to counsel of choice on the basis of Local Rules alone.

The difficulty in dealing with tactical motions purporting to raise claims of ethical misconduct occurring before far distant Courts was the moving force behind the Second Circuit's adoption of the rule requiring a high standard of proof to disqualify a party's chosen counsel. <u>Versace</u> at P. 663. <u>Bottaro</u> at P. 896-97. The government's efforts to manipulate Wilson's choice of counsel and, at the same, retaliate against Izen for past successful representation should be denied. Wilson is entitled to his counsel of choice, not counsel chosen by the Justice Department or the IRS.

3. **THE GOVERNMENT HAS BROUGHT ITS MOTION AS A TACTICAL PLOY AND IN RETALIATION FOR IZEN'S PAST SUCCESSFUL ADVOCACY.**

The government sent its "non-objection" as a tactical ploy and in retaliation for Izen's past successful advocacy. As pointed out in <u>Panduit Corp.</u>, P. 1576, supra:

> A disqualification order discredits the Bar generally and the individual attorney particularly. Thus, while

|   |   |
|---|---|
| 1 | there can be no hesitation to disqualify where impropriety has occurred, as in the cases cited by the parties upholding disqualification -- ...Judges must exercise caution not to paint with a broad brush under the misguided belief that coming down on the side of disqualification raises the standard of legal ethics and the public's respect. **The opposite effects are just as likely -- encouragement of vexatious tactics and increased cynicism by the public.** |

Government counsel, at least at the high levels of the Justice Department, care little for the rules binding on the local Bar and have even consistently argued, when it suits their purposes, that the ethical rules of Local Bars precluding certain conduct -- such as contacting Defendants in the pre-indictment stage -- do not apply to them. It is but a small step beyond such ploys to attempt to manipulate a Defendant's choice and access to a counsel who would be less favorable to its position than the Government would like. See (KPMG) United States v. Stein, 5105 Crim. 0888 (S.D.N.Y., 2006). (Coercing the companies that normally pay to defend their work force into withholding needed funds for representation.) Here, there are numerous warning signs the Government seeks to taint Wilson's counsel not only in retaliation for Izen's past representation of clients that the Government does not like, but also, to deprive Wilson of experienced counsel who may conceivably prevail on disputed issues which might arise in the sentencing process.

Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny. Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996). See also National Union v. L.E. Meyers Co. Group, 937 F.Supp. 276, 280 (S.D.N.Y. 1996). Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989). Here, the government, through

Mr. Osborne, has used the already-litigated "concerns" expressed in his "non-objection" "as a technique of harassment" against Wilson's counsel for retaliatory purposes. Nuri v. P.R.C., Inc., 5 F.Supp.2d 1299, 1304 (M.D. Ala. 1998). As District Judge Miley Thompson observed, Lawyers (such as the government counsel in this case):

> Have discovered that disqualifying counsel is a successful trial strategy, capable of creating delay, harassment, additional expense, **and perhaps even resulting in the withdrawal of a dangerously competent counsel.**

Nuri at P. 1304. Citing Developments in the Law: Conflict of Interest in the Legal Profession; 94 Harv. L.Rev. 1244, 1285 (1981).

**4. THE GOVERNMENT ALLEGATIONS SET OUT IN MR. OSBORNE'S "NON-OBJECTION" WERE ALREADY FULLY LITIGATED IN THE TAMPA CASE AND ARE NOW BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL.**

A order disqualifying or refusing to disqualify counsel from representing a Defendant in a civil or criminal case is a final order subject to appeal or mandamus. Kohl v. U.S. District Court, District of Idaho, 366 F.3d 813, 818-820 (9th Cir. 2004).

The District Court's decision in Mayer denying the Government's Motion to Disqualify on the same grounds as those put forth in Mr. Osborne's "non-objection" is now a final order which bars the Government from pursuing such allegations in any pleading before this Court.

Perhaps aware that no attorney on the part of the Government could sign a pleading or an objection which put forth the already-litigated "ethical" claims against Izen, the Government resorted to its tactic of sending a "non-objection" to the Court in an effort to avoid the strictures of pleading which require

such claims to have a good-faith basis.

Rulings on motions, including factual findings as well as conclusions of law, once they become final, are a bar to further litigation. Disimone v. Browner, 121 F.3d 1262, 1266 (9th Cir. 1997). As Circuit Judge Ferguson noted in Disimone:

> No litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the Court will provide a more favorable result the second time.

Citing Gindes v. United States, 740 F.2d 947, 949 (Fed. Cir. 1984). Clearly, the Government charges of misconduct levelled in its "non-objection" in this case were fully aired and litigated in the Tampa case before Judge Lazzara. The issue in question, the Government's purported ethical complaints against Izen were "decided explicitly and/or by necessary implication in the previous disposition...." Disimone at P. 1266. Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990). Judge Lazzara, when he overruled the Government's Motion to Disqualify in an order which became final when the Government abandoned its appeal in the Mayer case, "actually adjudicated" the Government's spurious complaints. These Government complaints in Mr. Osborne's "non-objection" "were essential to the judgment in earlier litigation between the parties." The doctrine of collateral estoppel bars the Government's efforts at relitigation in this case. Garrett v. City and County of San Francisco, 818 F.2d 1515, 1520 (9th Cir. 1987). South Delta Water Agency v. United States Dept. of Interior, 767 F.2d 531, 538 (9th Cir. 1985).

The Government's efforts to relitigate the same allegations

14

it unsuccessfully litigated in Tampa, Florida before Judge Lazzara (which are now incorporated in his Final Judgment in the <u>Mayer</u> case) and Judge Lorenz' denial of the same allegations in the <u>Evans</u> case are a bar to relitigation of the claims under both res judicata and collateral estoppel. See Izen Affidavit, Exhibits L and O.

## **CONCLUSION**

An examination of this entire record at this point establishes that this Court was duped into issuing the Show Cause Order by the Government's failure to responsibly inform the Court as to the facts surrounding the Government's past, unsuccessful litigation with Izen over the same charges. By failing to provide the Court with balanced and complete information, someone in the Government or IRS has knowingly violated the ethical standards of practice which require candor toward the tribunal and fairness to opposing party and counsel.

Based on all of the above facts and argument, and this record, this Court should enter an order discharging Izen from the Order to Show Cause.

             Respectfully submitted,

             PAUL J. SULLA
             PAUL J. SULLA #5398
             P. O. Box 425
             Laupahoehoe, HI  96764
             (808) 962-0025

             *[signature]*
             Joe Alfred Izen, Jr.
             5222 Spruce Street
             Bellaire, Texas  77401
             (713) 668-8815
             (713) 668-9402 FAX
             ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to Leslie Osborne, Jr., AUSA, Room 6100 PJKK Federal Building, 300 Ala Moana Blvd., Box 50183, Honolulu, HI 96850 by electronic filing and/or U.S. Mail, postage prepaid, on this the 22nd day of August, 2006.

_____
Joe Alfred Izen, Jr.

WILDISQ.RSP/TK386