--- F.3d ---
(Cite as: 1996 WL 640715 (9th Cir.(Cal.)))

Page 1

UNITED STATES of America, Petitioner-Appellee,
v.
Loren C. TROESCHER, Respondent-Appellant.

No. 95-55609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1996.

Decided Nov. 7, 1996.

Appeal from the United States District Court for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Joe Alfred Izen, Jr., Bellaire, Texas, for the respondent-appellant.

John A. Dudeck, Jr., Tax Division, United States Department of Justice, Washington, D.C., for the petitioner-appellee.

Before: REINHARDT, HALL, and LEAVY, Circuit Judges.

OPINION

REINHARDT, Circuit Judge:

*1 Loren C. Troescher appeals an order of the district court compelling him to appear before the Internal Revenue Service to answer questions and produce documents. [FN1] The IRS issued the summons after Troescher apparently failed to file income tax returns for several years. Troescher argues that the district court erred in rejecting his assertion of the Fifth Amendment's privilege against self-incrimination. We agree, and therefore vacate the order and remand to the district court for reconsideration in light of this opinion. [FN2]

I

The general standard for a valid assertion of the Fifth Amendment privilege against self-incrimination is well established. In order properly to assert the privilege, "respondents must show that their testimony would 'support a conviction under a federal criminal statute' or 'furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.' " United States v. Rendahl, 746 F.2d 553, 555 (9th Cir.1984) (quoting Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Indeed, it is enough if the responses would "merely 'provide a lead or clue' to evidence having a tendency to incriminate." United States v. Neff, 615 F.2d 1235, 1239 (9th Cir.) (quoting Hashagen v. United States, 283 F.2d 345, 348 (9th Cir.1960), cert. denied, 447 U.S. 925 (1980). The privilege is validly invoked "only where there are 'substantial hazards of self-incrimination' that are 'real and appreciable,' not merely 'imaginary and unsubstantial.' " Rendahl, 746 F.2d at 555 (quoting Neff, 615 F.2d at 1239). Finally, "the existence of such a hazard is generally determined from 'examination of the questions, their setting, and the peculiarities of the case.' "  Id. (quoting Neff, 615 F.2d at 1240).

The district court in this case initially analyzed Troescher's privilege claims properly, under the standard set forth above. The court ordered Troescher to file a statement under seal to determine whether he was justified in refusing to answer each question posed by the IRS and in refusing to produce each document requested under the subject summons. The court then held a hearing and conducted an in camera review of Troescher's statement and the IRS information requests, concluding in the end that "respondent is faced with substantial hazards of self-incrimination that are real and appreciable not merely imaginary and unsubstantial."

Despite that finding, however, the court "reluctantly" issued its order compelling Troescher to answer the questions and produce the documents demanded in the IRS summons. In the face of appellant's otherwise valid claims of privilege, the court was persuaded by the government's argument that binding Ninth Circuit precedent created a "Tax-Crime Exception" to the Fifth Amendment. It found that under Fuller v. United States, 786 F.2d

Copr. © West 1996 No claim to orig. U.S. govt. works

1437 (9th Cir.1986), and Brooks v. Hilton Casinos, Inc., 959 F.2d 757 (9th Cir.), cert. denied, 506 U.S. 906, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992), "the Fifth Amendment just does not apply when the taxpayer fears prosecution for a tax crime." Because Troescher demonstrated a real and appreciable fear of prosecution for tax crimes only, and could make no showing regarding non-tax crime prosecution, the court rejected his Fifth Amendment claims. The court felt bound by decisions it concluded were unjustifiable and "simply wrong," and asked that we correct what he rightly viewed to be in error.

*2 On appeal, the government appears to have discovered that the district judge's instincts were correct. It now confesses error and argues that "[t]he self-incrimination clause of the Fifth Amendment applies in all instances where a taxpayer has reasonable cause to apprehend criminal prosecution, whether tax related or not." We agree. There is no general "Tax-Crime Exception" to the Fifth Amendment, and Troescher's Fifth Amendment claims were not defeated here simply because he feared prosecution for tax crimes. [FN3]

It is easy to understand why the district judge was misled by some of our cases. Our opinions in Fuller and Brooks do contain language that suggests a distinction between tax crimes and non-tax crimes under Fifth Amendment analysis. In Fuller we stated, "The fifth amendment's self-incrimination clause provides no right to taxpayers to refuse to provide the IRS with financial information unless they make some showing that there is an appreciable possibility of prosecution for a non-tax crime." 786 F.2d at 1439. The actual holding in Fuller, however, and in every case it cites for support of that holding, is merely that the privilege is not validly invoked by asserting only vague, blanket, or generalized claims of self-incrimination. In Fuller and the cases it cites, we rejected Fifth Amendment claims where the taxpayer did not make any showing of an "appreciable possibility of prosecution," as required by traditional self-incrimination analysis. Id. Specifically in Fuller, we upheld a penalty assessed against three taxpayers for filing frivolous returns within the meaning of 26 U.S.C. § 6702, where each raised only "spurious" Fifth Amendment objections on their return forms. Any language suggesting a broad exemption from the Fifth Amendment in tax cases or that there is a constitutional distinction between tax and non-tax crimes is merely dictum.

The unfortunate dictum in Fuller was repeated in Brooks, where on the basis of Fuller we volunteered that "the fifth amendment's self-incrimination clause does not give taxpayers a right to withhold financial information from the IRS unless they can show an appreciable possibility of prosecution for a non-tax crime." 959 F.2d at 767 (emphasis in the original). Once again, however, the sweeping language suggesting a constitutional distinction between tax and non-tax crimes is simply dictum. In Brooks, discovery sanctions were imposed against a plaintiff who sued his employer and then attempted to avoid discovery by relying on the Fifth Amendment. We upheld the sanctions stating that "Plaintiffs who voluntarily come into court and seek economic damages must be prepared to prove their economic loss: 'The scales of justice would hardly remain equal ... if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim.'" 959 F.2d at 768 (quoting Lyons v. Johnson, 415 F.2d 540, 542 (9th Cir.1969), cert. denied, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970)). Thus, the unnecessarily broad language of Brooks regarding a taxpayer's right to withhold financial information from the IRS is clearly dictum and, like in Fuller, involves a question not before the court.

*3 To read the Fuller and Brooks dicta as creating a general "Tax-Crime Exception" to the Fifth Amendment would render the cases inconsistent with the opinions of this court that have actually considered the issue before us. The caselaw in this circuit is clear that the Fifth Amendment may be validly invoked when the taxpayer fears prosecution for tax

crimes. See, e.g., United States v. Bodwell, 66 F.3d 1000, 1001 (9th Cir.1995) (holding that "[a] reasonable belief that information concerning income or assets, such as that sought in the summons here, might be used to establish criminal failure to file a tax return can support a claim of Fifth Amendment privilege."); Rendahl, 746 F.2d at 555-56 (failure to file tax return); see also United States v. Turk, 722 F.2d 1439, 1440 (9th Cir.1983) (failure to file tax return), cert. denied, 469 U.S. 818, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984); United States v. Tsui, 646 F.2d 365, 367 (9th Cir.1981) (income tax evasion), cert. denied, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); United States v. Helina, 549 F.2d 713, 716 (9th Cir.1977) (income tax evasion and willful filing of a false return); Federal Deposit Ins. Co. v. Sovereign State Capital, Inc., 557 F.2d 683, 686 (9th Cir.1977) (tax fraud). Further, such a sweeping exception would be inconsistent with the law in other circuits. See, e.g., United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir.1991); Estate of Fisher v. C.I.R., 905 F.2d 645, 648-49 (2nd Cir.1990); United States v. Clark, 847 F.2d 1467, 1474 (10th Cir.1988).

II.

Accordingly, because we conclude--in light of the law of this circuit, and in light of the government's confession of error on appeal--that there is no "Tax-Crime Exception" to the Fifth Amendment, we vacate the order of the district court and remand for further proceedings so that it may dispose of the matter before it in accordance with the law that governs the invocation of the Fifth Amendment.

VACATED and REMANDED.

FN1. The parties disagree as to whether we have jurisdiction to hear this appeal. Indeed, the complex problem of jurisdiction presents the sole substantial disagreement between Troescher and the government. Accordingly, we conclude that this case is appropriate for application of the doctrine of hypothetical jurisdiction. See Wong v. Ilchert, 998 F.2d 661, 662 (9th Cir.1993) (assuming without deciding the existence of subject matter jurisdiction where the "difficulty of resolving [the jurisdictional question] is far greater than the difficulty of resolving [the merits of the appeal]") Several opinions in this circuit have set out requirements for the proper application of the doctrine. See, e.g., In re Grand Jury Subpoena Issued to Bailin, 51 F.3d 203, 206 (9th Cir.1995) (holding that the doctrine requires that (1) the jurisdictional question must be difficult; (2) the merits of the appeal must be insubstantial; (3) the appeal must be resolved against the party asserting jurisdiction; and (4) undertaking a resolution on the merits as opposed to dismissing for lack of jurisdiction must not affect the outcome"), cert. denied, --- U.S. ----, 116 S.Ct. 472, 133 L.Ed.2d 402 (1995). The issue here is different from that in our other cases, because here the parties do not disagree about the merits. Indeed, the reason the case is before us now is that the government argued a meritless position before the district court which it now confesses was in error. Thus, the resolution of the merits is in accordance with the position of both parties, and the third of the usual requirements is therefore inapplicable. As to the fourth requirement, whether we dismiss for lack of jurisdiction or reverse on the merits, the outcome of this case will not change, given the government's confession of error. In either event the parties will return to the district court and proceed in accordance with traditional Fifth Amendment doctrine. The other customary requirements are readily met. We should note, incidentally, that the requirements we frequently apply when invoking the doctrine are not mandated by historical practice. See Philbrook v. Glodgett, 421 U.S. 707, 722, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975) (resolving the merits in favor of the party asserting jurisdiction); Secretary of the Navy v. Avrech, 418 U.S. 676, 677-78, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (reversing the decision of the

court of appeals on the merits without deciding the "difficult jurisdictional issue" presented by the case, concluding that "even the most diligent and zealous advocate could find his ardor somewhat dampened in arguing a jurisdictional issue where the decision on the merits is foreordained"). Thus, our requirements may in some instances be flexible.

FN2. The government also argues that Troescher was precluded by waiver and res judicata from raising his Fifth Amendment claim with respect to the production of documents for the first time in the contempt proceeding. Because the facts in United States v. Rendahl, 746 F.2d 553 (9th Cir.1984), are indistinguishable from those in the case before us, we reject the government's argument, concluding as we did in Rendahl, Troescher's "first opportunity to litigate properly [his] Fifth Amendment claims was at the contempt hearing." Id. at 555.

FN3. We need not consider how or in what manner the Fifth Amendment may be invoked as a defense to a prosecution for failure to file tax returns. See, e.g., United States v. Sullivan, 274 U.S. 259, 263-64, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); Rendahl, 746 F.2d at 556.

END OF DOCUMENT

Copr. © West 1996 No claim to orig. U.S. govt. works