PAUL J. SULLA, JR. #5398
P. O. Box 425
Laupahoehoe, HI  96764
(808) 962-0025

Attorney for Defendant
Stephen B. Wilson

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 0 7 2006

at _11_ o'clock and _25_ min. _AM_
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | CR. NO. CR05-00342 HG |
| VS. | | INDICTMENT |
| STEPHEN B. WILSON, | | [26 U.S.C. ' 7201] |
| Defendant. | | |

**DEFENDANT STEPHEN WILSON SUPPLEMENT MOTION FOR
DOWNWARD DEPARTURE IN SENTENCING WITH SUPPORTING LAW;
MEMORANDUM IN SUPPORT; AFFIDAVIT OF DEFENDANT STEPHEN WILSON;
EXHIBIT A; CERTIFICATE OF SERVICE**

TO THE HONORABLE DISTRICT JUDGE OF THE SAID COURT:

NOW COMES Defendant Stephen Wilson ("Wilson") and files

this Supplemental Motion for Downward Departure by the Court in

the sentencing of the Defendant on account of the revisions

contained in the Final Pre-Sentencing report and other matters

not previously included.

A.    **BACKGROUND FACTS**

1.    This case was recently continued from October 26, 2008

to November 21, 2006.

2.    On October 6, 2006 the Government sent a notice to
Defendant that IRS added State of Hawaii income and general
excise taxes to the tax loss amounts for the years 1998 and 1999
relative to the defendant's tax loss calculations under the
sentencing guidelines.  See Exhibit "A" attached.

3.    The Final Pre-Sentence Report issued October 12, 2006
showed that Defendant's base level was increased from 15 to 16
as a result of the tax loss now exceeding $200,000.00.  This
increase is based solely upon the addition of the State of
Hawaii income tax and general excise tax for the years 1998 and
1999.

4.    Defendant Wilson personally sought to determine the
accurate amounts of the state taxes his business paid to the
State of Hawaii taxing authorities but was unable to determine
the amount of tax previously paid by his business due to a lack
or unavailability of the relevant tax records by the taxing
authority.  See attached Affidavit of Defendant Wilson.

B.   **MEMORANDUM OF LAW IN SUPPORT**

1.   Introduction

In U.S. v. Booker, 125 S.Ct. 738 (2005), the Supreme Court
held that the sentencing guidelines are advisory only, not
mandatory.  The other factor set forth in 18 U.S.C. § 3553(a)
must also be considered in fashioning the appropriate sentence.
See Booker, 125 S.Ct. 790 (Sentencing guidelines are but one of

2

many statutory concerns that federal courts must take into

account during sentencing determinations). These factors

include (1) the nature and circumstances of the offence and the

history and characteristics of the Defendant; (2) the need for

the sentence imposed – (A) to reflect the seriousness of the

offense, to promote respect for the law, and to provide just

punishment for the offense; (B) to afford adequate deterrence of

criminal conducts; (C) to protect the public from further crimes

of the Defendant; and (D) to provide the Defendant with needed

educational or vocational training, medical care or other

correctional treatment in the most effective manner; (3) the

kinds of sentences available; (4) the advisory guideline range;

(5) any pertinent policy statements issued by the sentencing

commission; (6) the need to avoid unwanted sentence disparity;

and (7) the need to provide restitution to any victims of the

offense. *Id*; *Booker*, 125 S.Ct. 764; *U.S. v. Menyweather*, 431

*F.3d 962 (9th Cir. 2005)*.

Defendant Wilson was misled into believing that a foreign

trust was a way to properly and legitimately avoid taxes. The

Defendant has demonstrated remorse in his actions and realizes

he made a serious misstep in his attempt to reduce his tax

liability. This has been an important lesson for this citizen

with an otherwise impeccable records both legally and

professionally.

Under the new advisory guidelines format, "District courts have a freer hand in determining sentences." U.S. v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005). As the court therein stated, "While the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a Defendant." Id.

Even prior to Booker, the Supreme Court stated, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual in every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. U.S., 518 U.S. 81, 113 (1996). The Guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." U.S. v. Dominguez, 296 F.3d 192, 196 n7 (3rd Cir. 2002).

As was stated in U.S. v. Biheiri, 356 F.Supp.2d 589 (E.D.Va. 2005), we must remember "fashioning a sentence cannot be reduced to a mere arithmetical exercise [and that] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrixes producing an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of judgment." To effectuate rehabilitation is a very important mitigating factor because it is a goal of punishment.

4

In 18 U.S.C. § 3553(a)(2)(D) that goal "cannot be served if a Defendant can look forward to nothing beyond imprisonment.

A sentence of imprisonment in the case at bar would be excessive in light of the goals and purposes of punishment. Defendant Wilson has only this particular offense in his entire background.  Otherwise, the Defendant is an outstanding citizen and this must be looked upon in his favor.  The Defendant is a physician who has spent years of his life in service of others, presently serving in a significant and valuable humanitarian mission and will best serve society by being able to continue in this service.

2.    **THE ENHANCEMENTS OF THE DEFENDANT'S SENTENCE ON ACCOUNT OF STATE TAXES BEING ADDED TO THE FEDERAL TAX LOSS IS IMPROPER.**

The defendant has pleaded guilty to one count of federal tax evasion for the year 1998.  The government has deemed the additional amount of the 1999 tax loss to also be included in determining the Defendant's sentence under the U.S. sentencing guidelines.  This total federal tax loss contained in the Preliminary Pre-Sentence Report to be $186,626.00 corresponded to a base offense level of 15.

The government now seeks to add $44,621.00 tax loss for the state income tax and $45,878.00 for the state general excise tax for the years 1998 and 1999 to the defendant's federal tax loss amounts of $186,626.00 bringing the total loss to $277,127.00.

5

See Exhibit "A".  As a result the increased tax loss, the Defendant is increased one level to base level 16, which increases his corresponding advisory guideline provision for imprisonment from 15 to 21 months to 18 to 24 months.  The Defendant argues that the uncharged state tax offenses should not be allowed to be added to the Defendant's tax loss in this case.

In support of this tax loss increase, the government relies upon U.S. v. Newbert, 952 F. 2d 281 (9th Cir. 1991) which held that non-federal relevant conduct can be considered for purposes of sentencing enhancement under the sentencing guidelines pursuant to USSG § 1B1.3(a)(2).  The Newbert case involved a defendant convicted of making a false statement to representative of the Department of Defense which was later extended to involve $200,000.00 of false vouchers, for which he was not charged, were not made in connection with his employer's government contracts, thereby involving the same state law offenses as the federal law offenses.   The Court in Newbert determined that "USSG § 1B1.3(a)(2) applies only to a certain class of crimes,"……of a character "where the defendant was involved in a pattern of small thefts."……Relevant conduct under § 1B1.3(a)(2) includes acts that were part of the same common scheme as the offense of conviction."  Ibid p.283.

USSG § 1B1.3(a)(2) states:

"(2)  Solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple accounts, all acts and omissions……that were part of a same course of conduct or common scheme or plan as the offense of conviction."

USSG § 3D1.2(d) states in pertinent part:

"(d) When the offense level is determined largely on the basis on the total amount of harm……and the offense guideline is written to cover such behavior".

Under § 3(D)1.2 multiple counts that substantially involve the same harm shall be grouped together.  These counts are therefore considered under 1B1.3(a)(2) as of a character applicable for consideration as "relevant conduct" in determining of guideline range.  The defendant however contends that the state tax loss does not come under the grouping guideline under §3D1.2(d) because it fails to fall under a specific "offense guideline written" for such behavior.

Defendant contends that the state tax loss is without any connection to Chapter 26 of the US Code relative to the federal offense under the federal income tax scheme the Defendant has been charged under.  In the case of U.S. v. Carroll, 798 F. Supp. 291(D. MD in 1992), the court stated:

"To the extent that Newbert should be followed at all, it should be confined to the range of offenses discussed therein and does not include such other simple offenses such as felon-in possession."  Ibid p.295.

7

The Defendant contends that the Newbert case does not include

state tax offenses unless they are also offenses under the

Federal tax scheme.  In Carroll the court reasoned there are a

number of reasons why this cross-reference is illegal:

> "First, there is the fact that, as discussed *ante*, it is
> *ultra vires* the power of the Commission over the punishment
> of federal offenses, as prescribed by statute, to punish
> for conduct that does not violate federal law.  (The) U.S.
> Sentencing Commission Guidelines manual is stretched beyond
> a disregard for formalities charging, to disregard for the
> limits of federal jurisdiction in the sentencing phase."
> Ibid, p.294.

Further Carroll went on:

> To allow the Sentencing Commission as a sort of "junior
> varsity congress" Mistretta v. United States, 488 U.S.
> at 427,109 Sup. Ct. 683(Scalia dissenting), to exercise
> palpable sentencing power over non-federal offenses by the
> simple and innocuous looking expedient of a "cross-
> reference" is blatantly intolerable and illegal, and the
> cross-reference…must, therefore, be read as being confined
> to other federal offenses that the offender might have
> committed…. Ibid p.294.

In a more recent case of U.S. v. Ahmad, 202 F.3d 588(2nd Cir.

2000), the court there in discussing the grouping rule under

§3D1.2(d) states:

> "Implicit in a grouping rule, therefore, is a requirement
> that the uncharged offense is a "harm" under federal law
> and that defendant could have been charged with that
> offense absent jurisdictional and procedural bars."
> Ibid p.591.

The State of Hawaii general excise tax (GET) law is a purely

state tax mechanism that has no counterpart in the federal

income tax scheme upon which the Defendant was charged.  While

the state income tax law falls closer to the federal income tax

offense, it too is still flawed for lack of federal

jurisdiction.    Further, beyond the mere absence of a

jurisdictional hook, the court in Ahmad, also found:

> "Conduct that may only be charged as a state crime, because
> it involves elements criminalized under state law that are
> not elements of a federal crime, may not be grouped under
> § 3D1.2(d) and thus may not be considered as "relevant
> conduct" under § 1B1.3(a)(2)."    Ibid p.591.

The State of Hawaii GET scheme cannot be shown to be

criminalized under federal law.    Thus, even if this Court were

to find that the state income tax is "relevant conduct" that may

be grouped to determine a tax loss under the federal tax

offense; the state GET is still not "relevant conduct" because

it does not fall under the essential elements of any federal

offense.

A state tax crime, not defined by elements criminalized

under federal law, should be disregarded from the tax loss

charge against defendant.    If only, the state GET is reduced

from the tax loss, the amount of tax loss would just exceed the

$200,000.00 threshold by approximately $31,000.00.    The

defendant contends that of this amount, if the Court were able

to feel that state income taxes are to be included, would just

barely meet the next threshold that in 1998 extends to $325,000,

§2T4.1(2) and therefore this little amount so close to the

$200,000 threshold should not be used as a consideration to cause an enhancement under the guidelines.

Given the questionable applicability of the Newbert case to the instant case, the small amount of state tax loss involved, the alleged lack of any state records upon which to charge the defendants, and the inapplicability of the state income and GET to fall with the grouping required for "relevant conduct", the Court is well within its discretion to not increase the tax loss against the defendant over the Preliminary Pre-Sentencing Report and/or permit a downward depart to the earlier base offense level of 15, for the causes set forth.

3.   **RECIDIVISM IS UNLIKELY**

Given the fact that Defendant Wilson, in the past demonstrated significant professional responsibility, has an otherwise clear criminal record, wishes to serve society and make restitution in this matter; it is highly unlikely that the Defendant will be subject to recidivism. This should be a consideration for the Court to grant a downward departure.

4.   **THE DEFENDANT HAS A MEDICAL CONDITIONS REQUIRING SPECIALIZED TREATMENT**

Defendant has post-polio syndrome that will require increasing specialized care and treatment in the future.  The Defendant is presently disabled and only able to oversee and perform light duties.  In *U.S. v. Hildebrand*, 152 F.3d 756 (8th

Cir. 1998) the court affirmed the downward departure for a
70-year-old from a range of 51 to 63 months to probation with
six months in home confinement where the defendant was a
bookkeeper for a group convicted of mail fraud and had serious
health conditions.  The court stated "age may be reason to
appoint a sentence below the applicable guideline range when the
defendant is elderly and infirmed and where a form of punishment
such as home confinement might be equally efficient and less
costly than incarceration."  A management problem with an inmate
who has specialized medical requirements is difficult.

   5.   **THE DEFENDANT MAY BE MORE VULNERABLE TO ABUSE AND
        PREDATION**

        It is important to consider as a mitigating factor the
management difficulties with imprisonment of this particular
Defendant.  In an important report, it has been stated that
"management problems with elderly inmates... are intensified in
the prison setting and include:  vulnerability to abuse and
predation, difficulty in establishing social relationships with
younger inmates, need for special physical accommodations in a
relative inflexible physical environment. *Correctional Health
Care, Addressing the Needs of Elderly, Chronically Ill, and
Terminally Ill Inmates*, U.S. Department of Justice, National
Institute of Corrections, 2004 Edition, pp. 9 and 10.  The
report notes on Page 10 that first time offenders are "easy prey

for more experienced predatory inmates."  It should be noted

that throughout the report, the elderly are defined by the

various institutions as 50 or older.

Given Defendant Wilson's need for specialized medical care,

his age, and general professional background which likely

significantly varies from others in a penal imprisonment

environment, consideration for punishment other than

incarceration ought to be given in the interest of

individualized justice.

6.  **REHABILITATION IN THE FUTURE**

Defendant Wilson has engaged in no further criminal

enterprise before or since the circumstances that are presently

before the Court.  Even in a case where a defendant had engaged

in further criminal activity while in the process of

rehabilitation did not preclude a finding of rehabilitation.

For example, U.S. v. Hawkins, 380 F.Supp.2d 143 (E.D.N.Y. 2005),

in an insurance fraud case where Guidelines indicated 12 to

18 months, a sentence of probation was imposed.  The court found

rehabilitation even given the fact of defendant engaging in such

further criminal activity while in the process of

rehabilitation.  The court described rehabilitation as often

meaning "turning a bad life into a decent, honorable, law-

abiding life" or when "a relatively decent person falls into bad

conduct, but immediately and permanently repents."

Defendant Wilson has engaged in no further criminal activity and is still seeking in every regard to lead a decent, honorable, law-abiding life and has immediately and permanently repented for his actions. In fact, the defendant's humanitarian mission in Thailand that started with the tsunami of 2004 has been recognized in December 2005 by the Thai government with The Gold Medal (6th Class) of the Direksunabhor known as the Royal Decree of Decoration Conferment for devotional services to the Kingdom of Thailand.  The Royal Decoration is extremely unusual for a physician to be awarded much less a foreigner.  It was awarded to the Defendant in recognition of his selfless service and, needed specialized forensic skills that he has been able to provide to the government of Thailand.  The Defendant is essentially serving the Thai government to assist in the identification of persons missing remains as an expert in his field of Forensic Anthropology.  His service in Thailand also assists the interests of the United States in several regards.

7.    **THE DEFENDANT SHOWED UTTER LACK OF SOPHISTICATION**

A downward departure from 15 to 21 months to probation and fine was warranted where the transaction showed "utter lack ... of sophistication" (U.S. v. Jagmohan, 909 F.2d 61, (2nd Cir. 1990) where the defendant attempted to bribe a city official with a personal check).

In this case, Defendant Wilson is not sophisticated in the nature and uses of trusts in relation to the federal income tax scheme.  The Defendant's attempt to reduce his tax liability through what he believed was a proper and legal formula was obviously and clearly false.  The defendant has since cooperated with the government and identified third parties, uncharged but sophisticated and experienced in use of trusts and the tax laws and enforcement; that solicited, directed, and set up all of the defendant's trust structure.  While the Defendant accepts full responsibility for his actions, it is due to his complete and utter lack of sophistication in the law in regard to trust and tax laws that later resulted in this action.

The Defendant has received a two (2) point enhancement on account of sophisticated concealment relative to the trust scheme employed by the Defendant, pursuant to USSG §2T1.1(b)(2), yet none of the set up, management or direction was performed by him.  The Defendant, in a busy medical practice, had no time to study trust law and the income tax code pertaining to foreign trusts.  Someone else had to assist and direct.  Someone else had to provide the legal opinion that the Defendant relied upon. It is ironic here that it was the lack of the Defendant's own sophistication in taxes and trust that lead him to promoters of a sophisticated concealment scheme.  This upward enhancement for sophisticated concealment is inappropriate here and should be

14

disregarded by this Court in determining the Defendant's sentence.

C.    **CONCLUSION**

Given the totality of the circumstances in the present case, it becomes evident that Defendant Wilson is a prime candidate for probation and/or alternative service in lieu of incarceration.  His lack of prior and subsequent criminal activity, his age and infirmity, his willingness to make restitution and accept responsibility and cooperate with the IRS, and his lack of sophistication, in addition to his previous and current humanitarian works and rehabilitation all indicate a defendant who should be granted probation.

The Defendant has proposed that he be able to continue to serve the humanitarian mission he is presently involved with in Thailand, as a condition for his probation or that he be permitted to serve needed medical services at PHS Indian Health Center in Kayenta, Arizona as alternative community service in lieu of incarceration.  These alternatives to incarceration are appropriate, and beneficial to significant humanitarian missions, and would best serve the ends of justice.

Respectfully submitted,

STEPHEN B. WILSON
BY His Attorney

_____
Paul J. Sulla, Jr.

15